## CLAIBORNE–RENO CO. v. E. I. DU PONT DE NEMOURS & CO.
### No. 10105.

Circuit Court of Appeals, Eighth Circuit.
May 6, 1935.

John L. Gillespie and Mark C. Reno, both of Des Moines, Iowa (Samuel Williston, of Cambridge, Mass., and Fey H. Moody, Walter C. Marquis, and James M. Stewart, all of Des Moines, Iowa, on the brief), for appellant.

**566**

Willis J. O'Brien, of Des Moines, Iowa (Hughes, O'Brien & Faville, of Des Moines, Iowa, and C. M. Spargo, of Wilmington, Del., on the brief), for appellee.

Before WOODROUGH and FARIS, Circuit Judges, and DONOHOE, District Judge.

FARIS, Circuit Judge.

This is the second appearance of this case in this court. Formerly appellee sued appellant on an account for goods sold and delivered. The correctness of the account was admitted, but appellant filed a counterclaim for damages for the alleged breach of a contract, and had judgment against appellee. Upon the first appeal, the judgment in favor of appellant here was reversed "for further proceedings not inconsistent with this [the] opinion." E. I. Du Pont de Nemours & Co. v. Claiborne-Reno Co., 64 F.(2d) 224, 233, 89 A. L. R. 238.

Thereafter in the trial court appellant amended its counterclaim by filing a second amended and substituted counterclaim, which it again, later and by permission of the court, amended. At the close of the evidence on the part of appellant, the trial court sustained the motion of appellee for a directed verdict, on the ground, among others urged, that the opinion of this court and the judgment thereof on the first appeal are the law of the case. Judgment was entered in favor of appellee for the full amount of its account.

No reason exists why we should lengthen these views by a restatement of the facts. These are fully and carefully set out in the opinion of this court rendered on the first appeal, wherein as reported [64 F.(2d) 224, 89 A. L. R. 238] they may be read by the curious.

Appellant relies for reversal on five alleged errors. However, these but state the identical legal proposition in five different ways. Condensed into one question, that question is, Do the pleadings and evidence in the instant case so far differ as to avoid the controlling effect of the opinion and judgment of this court on the former appeal? In short, did the rule called "the law of the case" warrant the trial judge, who deemed it did, in directing a verdict?

■ It is proper, in approaching the solution of the question propounded, to determine in limine what is meant by the law of the case. Excellent definitions are at command in many cases in this circuit.

Pennsylvania Mining Co. v. United Mine Workers (C. C. A.) 28 F.(2d) 851; Northern Pacific Ry. Co. v. Van Dusen Harrington Co. (C. C. A.) 60 F.(2d) 394; Ætna Life Insurance Co. v. Wharton (C. C. A.) 63 F.(2d) 378; Zurich General Accident & Liability Ins. Co. v. O'Keefe (C. C. A.) 64 F.(2d) 768; American Surety Co. v. Bankers', etc., Association (C. C. A.) 67 F.(2d) 803, loc. cit. 805. In the latter case, which is one of the very late cases defining the "law of the case," this court in an able opinion by Van Valkenburgh, Circuit Judge, said: "The phrase 'law of the case' has been employed and applied in many decisions of this and other federal courts. Stated generally, the rule is that, 'where evidence is substantially the same on both trials, questions of law determined on writ of error or appeal are 'law of the case,' both for trial and appellate court, on second writ of error or appeal.' Pennsylvania Mining Co. v. United Mine Workers of America et al. (C. C. A. 8) 28 F.(2d) 851; Thompson v. Maxwell Land-Grant & Railway Co., 168 U. S. 451, 18 S. Ct. 121, 42 L. Ed. 539. This rule has been announced and received adherence in many decisions of this court. Finley v. United Mine Workers, 300 F. 972; Federal Reserve Bank v. Omaha National Bank, 45 F.(2d) 511; Page v. Arkansas Natural Gas Corporation, 53 F.(2d) 27; City and County of Denver v. Denver Tramway Corporation, 23 F.(2d) 287; Ætna Life Ins. Co. v. Wharton, 63 F.(2d) 378; H. P. Coffee Co. v. Reid, Murdoch & Co., 60 F.(2d) 387."

There are two points of alleged difference urged by appellant as appearing in the pleading and evidence in the present appeal, which it is urged did not appear when the case was here on the first appeal. These are that: (a) Both the amended counterclaim and the evidence on the trial disclosed that the article dealt with in the contract, namely, Duco, is covered by United States letters patent, and therefore the contract was good as a license and ran for the life of the patent; and (b) that on such last trial both the amended counterclaim and the evidence showed a consideration for the contract, namely, a purchase by appellant, contemporaneously with the alleged verbal contract, of some $1,800 worth of Duco from appellee.

■ The contention that the contract constituted a license agreement to sell a patented article, and therefore it ran for the

full remaining term, if any, of the patent, was not anywhere mentioned on the first trial. Nothing now here urged concerning it is therefore affected by the law of the case. But the contention must fail on account of a lack of proof, and by reason of the fact that nothing is plainer than that the contract in the case is not a license agreement under a patent, nor is it any conveyance of any interest whatever in a patent. The word "patent" nowhere occurs in the written contract. It occurs in the evidence only in a casual statement by one of appellant's witnesses in which he quotes the agent of appellee, as saying "it is patented, it is a patented article," and again when the label on a can was offered as evidence of a patent, and an objection to the offer sustained by the court. This action of the court is nowhere complained of as error, so the can is not before us, and, if it were, it would not be admissible as evidence of a patent. It is too plain for argument that the mere statement of the agent of appellee in a casual conversation that the article sold is patented is not sufficient to prove that the definitive contract afterwards made, and which makes no mention of a patent, is in fact a license agreement or the conveyance of an interest in some unnamed and unnumbered letters patent. The suit was an action' at law. No effort was made and no contention anywhere urged that the written contract did not express the final meeting of the minds of the parties to it. No attempt was made to reform it, so it necessarily speaks the agreement entered into. We know of no reason why antecedent and extrinsic facts, save such as bore on the damages, should have come into the case to confuse it. As this court held on the first appeal, the written contract is a sales agency contract, and nothing more. 64 F.(2d) 224, loc. cit. 229, 89 A. L. R. 238. It does not bear a single earmark of a license agreement under a patent or of a conveyance of any interest whatever, in a patent. And so what was said by the Third Circuit in the case of Standard Sewing Machine Co. v. Jones (C. C. A.) 260 F. 170, 172, is particularly apposite:

"The Standard Company maintains that, under a proper construction, both contracts are license agreements. This contention is based on the single fact that *the subject matter of the contracts is (in part) patented articles, namely, sewing machines manufactured under a patent.* There is noth-ing in the contracts to suggest that they are license agreements *beyond the circumstance that a part of their subject matter is patented articles.* They contain no reference to the patent under which the machines were made and no reference to the machines as patented articles. The silence of the contracts on the subject of patents, patent rights, licenses and royalties, leads us to believe that it did not occur to the parties, or to any one of them, that they were entering into license agreements. If these contracts are to be construed as license agreements, it can only be upon the bald fact that a part of the articles covered by the contracts were patented, and that too, without regard to whether that fact was known to both parties. We are not familiar with any law that raises an agreement of license by implication from the single fact that the subject matter of the contract is patented. The minds of contracting parties must meet in a license agreement just as in any other agreement. Whatever may be their real nature, the contracts, manifestly, are not agreements to share in a patent monopoly." (Italics ours.)

It follows that, while so much of the case made on the last trial is unaffected by the rule of the law of the case, the contention must yet be disallowed, because of a failure of proof, and because the contract here is even more silent upon the matter of mention of a patent than were the contracts in the Jones Case, supra.

In the original counterclaim on which the first judgment reversed here was rendered it is pleaded: "That defendant, in compliance with said verbal portion of said contract bought and paid for a reasonable stock of Duco, and thereafter carried a reasonable stock of Duco and began to render said services to the best class of refinishers in the State of Iowa, all as above set out." This identical clause in identical language is found with subsequently added specific addenda amplifying it, in the amended and substituted counterclaim on which the last trial was had. Of course, identity of pleading is not controlling; it is substantial identity of facts which is the test, on which to determine whether the rule of the law of the case is or is not applicable. But identity of pleading may cast light on the reason for the appearance of certain evidentiary facts in the case.

On the first trial of the case, witness M. M. Reno, who was secretary and

treasurer of appellant company, said, among other things touching antecedent dealings, this: "A representative of the company called and talked about going into that business. He told us he would appoint us distributors and he took an order." It may be conceded that, standing alone and aside from the setting and other testimony in the case, this statement may be somewhat colorless. But counsel for appellant, then appellee, construed the statement as constituting a consideration for the subsequent contract, for in their brief on the first appeal they say: "By necessary implication, the Reno Co. agreed to buy a stock of Duco products. * * * This was fulfilled by the Reno Company purchasing in the fall of 1924, and thereafter maintaining, a stock of Duco products." But this is not all. Again in their former brief counsel for appellant said: "The various considerations paid by the appellee included the purchase and maintaining of a stock." Other references are made in the brief to the fact that among the considerations moving appellee to enter into this agreement was "the purchase of a stock of Duco."

True, the point that this purchase was the consideration for this contract was not on the former trial below or on the hearing in this court then stressed with the vehemence now here present. But it was in the case. If it was not then so prominently put forward as to attract the attention of this court and demand specific treatment, those things do not detract one iota of vigor from the law of the case rule, for, if this court had overlooked the potency of the point, in the opinion filed the matter should have been called to its attention by a motion for a rehearing. A very similar situation arose in this court in the case of Mortgage Loan Co. v. Livingston, 66 F.(2d) 636, loc. cit. 640, wherein the above practice is suggested as necessary in a case wherein it was contended that this court overlooked vital and controlling facts in the record, on the first appeal.

■■ We have carefully examined the record and briefs on the former appeal in order to ascertain whether there are any such substantial differences in the facts as should move this court to refrain from applying to this appeal the rule of the law of the case. We have found none such. As conclusively demonstrated in the careful and able opinion of Judge Sanborn, rendered on the first appeal, the contract sued on is a mere "sales agency agreement, terminable at will by the Reno Company," and whereby the Reno Company was not bound. So it follows as a corollary that, if the appellant was not bound, the appellee could not be bound. So clear this conclusion seems to be that it is not necessary to resort to the rule of interpretation by the parties to it, as the record discloses that interpretation. This contract was either terminable at will, or it ran forever, or at least for the corporate lives of the parties signatory. Clearly the parties in the beginning took the view that it did not run perpetually; for four contracts were made between 1924 and October, 1927. Save for some slight differences in prices and discounts, these four several contracts are wholly similar in language. The rule of law held in mind and above forecast touching the interpretation of contracts, is that, when a contract is not clear and unambiguous, or is subject to different interpretations, that construction of it put upon it by the parties to it will be adopted by the courts. C. D. Smith Drug Co. v. Saunders, 70 Mo. App. 221; St. Louis Gaslight Co. v. St. Louis, 46 Mo. 121.

It follows from what is said that the trial court correctly ruled in holding that he was, upon the facts adduced on the trial below, concluded by the former opinion in this case, and the judgment is therefore affirmed.