## NEW YORK LIFE INS. CO. v. GOLIGHTLY et al.*
### No. 10994.

Circuit Court of Appeals, Eighth Circuit.
Jan. 31, 1938.

*Rehearing denied Feb. 28, 1938.

Earl King, of Memphis, Tenn. (Louis H. Cooke, of New York City, and King, Taylor & King, of Memphis, Tenn., on the brief), for appellant.

B. J. Semmes, of Memphis, Tenn., for appellees.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a suit at law upon a life insurance policy issued by appellant upon the life of Byrd H. Golightly for $12,500. The insured applied and was examined by the company's doctor for the insurance on February 15, 1934. The policy is dated February 27, 1934, and was delivered to the insured on March 2, 1934. The death of the insured occurred on January 31, 1935.

The plaintiffs below were the beneficiaries under the policy, the brothers and sisters of the insured. The company has asserted two defenses: First, that the insured had fraudulently induced the company to issue the policy by making false statements in his application for insurance; and, second, that the insurance never took effect because of a breach of a condition precedent. The policy provided that it should take effect only if the applicant had not been treated by a physician between the time of the application for the insurance and the date it was issued, and the company contended that Golightly had been treated by a physician within this time.

The case has been tried twice in the District Court. At the first trial the court directed a verdict for the insurance company on the ground that the insured had made untrue statements in his application. Upon appeal, this court held that, upon a consideration of the whole testimony, it was error to sustain the motion for a directed verdict, and the judgment was reversed. See Golightly v. New York Life Ins. Co., 8 Cir., 85 F.2d 122. The insurance company then amended its answer to set out more fully its defense of breach of condition precedent, and at the second trial introduced additional evidence that had not been heard at the first trial. At the close of all the evidence on the second trial, the company moved for a directed verdict. That motion was overruled, and, upon submission of the case to the jury, a verdict was returned for the plaintiffs. From the judgment based thereon, the company has brought this appeal, citing as error the refusal of the District Court to direct a verdict.

The principal question to be decided on this appeal is whether the evidence in support of the appellant's affirmative defenses was so conclusive that a motion for a directed verdict in its favor should have been sustained. Since, as to the defense of misrepresentation, this is the identical question presented on the former appeal, the decision there is the law of the case, unless the evidence introduced at the second trial is substantially different from that considered upon the first appeal. Ætna Life Ins. Co. v. Wharton, 8 Cir., 63 F.2d 378; American Surety Co. v. Bankers' Savings & Loan Ass'n, 8 Cir., 67 F.2d 803; Claiborne-Reno Co. v. E. I. Du Pont de Nemours & Co., 8 Cir., 77 F.2d 565; De Parcq v. Liggett & Myers Tobacco Co., 8 Cir., 81 F.2d 777; United States v. Bollman, 8 Cir., 81 F.2d 1009.

The first consideration, therefore, is to determine in what respect the record on this appeal is different.

At the first trial it was shown that Golightly had been the holder of policies of life insurance issued by the appellant company amounting to $12,500, until January 13, 1934, when he canceled his insurance. When the firm of cotton factors to whom Golightly was indebted learned of this, they insisted that he take out more insurance, and declined to make further loans until he did so. Accordingly, on February 15, 1934, Golightly made application for a $12,500 policy which was delivered to him on March 2, 1934. On the day application was made Dr. Reed, the medical examiner for the company, came out to see

Golightly at his farm to obtain answers to certain questions. Among the answers given by Golightly were the following:

"E. Have you ever raised or spat blood? No.

"F. Have you gained or lost in weight in the last year? No.

"8. Have you ever consulted a physician or a practitioner for or suffered from any ailment or disease of

"A. The brain or Nervous System? No.

"B. The heart, blood vessels or lungs? No.

"C. The stomach, or intestines, liver, kidneys or bladder? No.

"D. The skin, middle ear, or eyes? No.

"9. Have you ever had rheumatism, gout or syphilis? No.

"10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers? No.

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? None."

Dr. Reed testified that Golightly then mentioned that he had been to Dr. Parker with an abscess on his breast bone. Dr. Reed looked at it and concluded that it was not important enough to be mentioned.

In order to prove the falsity of the statements made in the application, the company relied chiefly upon the testimony of Dr. Parker, who had been Golightly's family physician. Dr. Parker testified at the first trial that he had a record of two occasions when Golightly had visited him before making application for insurance. One was on December 7, 1933, with reference to "muscular rheumatism," and the other was February 5, 1934, when Golightly had the boil on his chest. The latter office record contained the notation "Weak. Lost about 20# wt 127#." Another record made by Dr. Parker when the patient went to the hospital for examination on April 1, 1934, indicated that he had had an attack of rheumatism and influenza in 1933, and had again suffered from rheumatism in 1934. Dr. Parker also testified that it was his conclusion that Golightly had suffered from cirrhosis of the liver about a year prior to his death on January 31, 1935. In the opinion written on the former appeal, this evidence was considered at length and it was pointed out that a great deal of Dr. Parker's testimony represented only his own thoughts and suspicions which had not been communicated to the patient; that in many respects the evidence was uncertain and confusing, and did not show that the ailments were such that they should have been mentioned in the application for insurance. This court concluded that such evidence was not sufficient to take from the jury the question of whether the insured had made a material misrepresentation with intent to deceive.

At the second trial Dr. Parker was not present, but the transcript of his former testimony was introduced in evidence. In addition, there were offered two subsequent depositions made by him and the testimony of Ann Louise Golightly, a sister of the insured, and of Dr. Craig, who merely explained the nature of amoebic dysentery. This was the only new testimony introduced at the second trial. In his first supplementary deposition Dr. Parker attempted to strengthen his former testimony. He supplied a number of details which he had been unable to give in his former testimony and stated that Byrd Golightly in 1933 had an attack of rheumatism accompanied by influenza which lasted six months and for which the doctor frequently gave treatment in his office. Dr. Parker stated that when Golightly came to the office on February 5, 1934, he was losing weight and he knew it. The doctor further testified that at the time of this visit he did not know what was causing this loss of weight, and advised the patient to go to the hospital. In his last deposition Dr. Parker testified that of his own independent recollection and knowledge Golightly had consulted him and received treatment two or three times a week from the 5th of February until April, that at these visits he was giving Golightly treatments for amoebic dysentery, and that he had a record of two consultations and treatments between February 15, the date of the application for the policy, and March 2, the date of its delivery. The doctor also declared that he had a memorandum of two charges, for $2 and for $5, which he said were evidently for laboratory examination on February 16.

It is this additional testimony upon which the appellant relies to avoid the conclusion reached on the former appeal. It is true that some of the weaknesses

pointed out in the former opinion have now been bolstered by positive assertions. But it does not follow from this that a new question is presented here. Ætna Life Ins. Co. v. Wharton, supra. Unless something was added by the new evidence which compelled the conclusion as a matter of law that there was intentional material misrepresentation, then the former decision is the law of the case. The doctor's testimony acquires no additional credibility from the fact that it was substantially undisputed by any direct testimony, since the doctor and the deceased would be the only persons likely to know what transpired between them. Other factors than direct contradiction may affect the conclusiveness to be attributed to evidence. The doctor's uncertainty and doubt at the first trial as to the facts of which he was so positive in his subsequent testimony, and his failure in the original testimony to mention the many visits of the patient mentioned in the later depositions, were circumstances to be considered. The testimony as to the great loss of weight is not consistent with the testimony of several persons who were well acquainted with the deceased, including the company's medical examiner and its agency cashier, that at the time of making application he appeared to be normal and healthy. The testimony in the last deposition of Dr. Parker respecting treatment for amoebic dysentery in February, 1934, contrasts strangely with the absence of any mention of that ailment at either of the first two occasions when the doctor described the various ailments from which his patient suffered. There was no mention of amoebic dysentery in the medical history of the patient which was made by Dr. Parker on April 1, 1934, when Golightly entered the hospital; and Ann Louise Golightly, the sister with whom he lived, testified that amoebic dysentery was not diagnosed nor discussed until ten days after he had entered the hospital. She further stated that Dr. Parker had been employed as her brother's plantation doctor for about fifty tenants, but that because of dissatisfaction she stopped using him after her brother's death. It was also shown that Dr. Parker was employed as an examiner for the appellant insurance company.

On the prior appeal this court held that the insurance company was not entitled to a directed verdict upon the issue of misrepresentation because the testimony of Dr. Parker was not sufficiently clear and convincing. It cannot be said that with the additional testimony the defendant's case is any more clear and convincing. The decision on the former appeal therefore is the law of the case upon this issue. The question was properly submitted to the jury.

The second ground upon which the defendant moved for a directed verdict was that Golightly's visits to his physician between the application for the policy on February 15, 1934, and the delivery of it on March 2, 1934, amounted to a breach of a condition precedent which prevented the policy from ever going into effect. The question thus raised was not decided on the former appeal. The only evidence relied upon by the company to prove a breach of this condition precedent was the testimony of Dr. Parker. As has been pointed out above, the testimony of Dr. Parker that he had treated Golightly for amoebic dysentery during that period was not so conclusive as to leave no question for the jury. There was no error in overruling the motion for a directed verdict upon this ground.

It is further contended that the court erred in admitting over objection the testimony of P. H. Gideon and of J. P. Norfleet.

The witness Gideon was the agency cashier of the appellant insurance company at Memphis, Tenn. He testified that the insured carried two policies of life insurance with the appellant company aggregating $12,500, and that when on January 13, 1934, an agent of the company attempted to collect a note Golightly had given to pay his premiums, the insured paid the amount of the earned premium and surrendered his policies for cancellation.

Norfleet was a cotton factor at Memphis who loaned the insured money from time to time. The policies which were canceled had been assigned to him as security. Gideon called Norfleet and told him that the premiums on Golightly's policies had not been paid. Norfleet testified that when he loaned Golightly some money in the spring of 1934 he then "required him (Golightly) to take out an additional amount of insurance and assign it to us. * * * When I loaned him this money for our firm I told him not to draw on me until he got it fixed up. Then he went off and took out another insurance policy which he did assign absolutely, as I recall

it, to our firm." The amounts of the policies were the same. He further testified that the insured drew on him for the first premium on the new policy; that at that time Golightly's apparent condition of health was as it had been for 40 years; and that he was a healthy looking man, robust, and "in good health as far as I could see." He said he saw Golightly every Saturday and that he had no reason to believe that he was not in good health.

■■ The statements as to the apparent health of the insured are competent in view of the fact that the loss of weight, to which the doctor testified, was so great, if true, that it should have been noticeable by those who were acquainted with the man. The testimony consisting of the circumstances leading up to the making of the application for the policy were clearly admissible upon the question of fraud. Northwestern Mut. Life Ins. Co. v. West, 62 App.D.C. 381, 68 F.2d 428, 431.

There being no error, the judgment is affirmed.