### CHICAGO, ST. P., M. & O. RY. CO. v. KULP.\*
### No. 11245.

Circuit Court of Appeals, Eighth Circuit. March 10, 1939.

Warren Newcome, of St. Paul, Minn. (Alfred E. Rietz, of Farmington, Minn., and William T. Faricy, of Chicago, Ill., on the brief), for appellant.

William H. DeParcq, of Minneapolis, Minn. (Robert J. McDonald, of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellee herein, plaintiff below, sued as administrator to recover damages for the death of Harry Rice Kulp, sustained while in the employ, as a freight brakeman, of the above named appellant railway company, generally referred to as the "Omaha". In this opinion the parties will be designated as in the trial court.

This is the second time this case has appeared before us on appeal. On the former trial, at the conclusion of all the evidence, the district court sustained the defendant's motion for a directed verdict on the ground that the evidence was insufficient to warrant submission to a jury. This court held that the trial court erred in sustaining that motion. The judgment below was reversed and remanded for a new trial. At that trial the jury returned

a verdict for the plaintiff and the Omaha appeals.

The facts involved at the former trial are very fully set forth in the opinion of this court on the last appeal (8 Cir., 88 F.2d 466), to which reference is made. They will be repeated here only to such extent as may be necessary to an understanding of the specific issues presented on this appeal. The contentions of appellant may be covered under two heads: (1) No substantial evidence of negligence or proximate cause; (2) decision of this court on prior appeal does not preclude re-examination and reversal of judgment, and this action is earnestly invited. Appellee invokes the doctrine of "law of the case" as decisive on the present appeal; but insists that, in any event, the evidence adduced justifies submission to the jury and furnishes substantial support to its verdict.

In Thompson v. Maxwell Land Grant & Railway Company, 168 U.S. 451, 456, 18 S.Ct. 121, 123, 42 L.Ed. 539, Mr. Justice Brewer, speaking for the Supreme Court of the United States, said:

"It is settled law of this court, as of others, that whatever has been decided on one appeal or writ of error cannot be re-examined on a second appeal or writ of error brought in the same suit. The first decision has become the settled law of the case".

 This court has repeatedly held that the decision on former appeal is the "law of the case" on a question presented in that former appeal, unless the evidence introduced at the subsequent trial is substantially different from that considered on the first appeal, and must be followed in all subsequent proceedings in such case in both district and appellate courts, unless that decision is clearly erroneous and works manifest injustice. The introduction of new testimony at the second trial which is merely cumulative will not prevent the application of this doctrine on the second appeal. While this rule of practice is not a limit of power, it is nevertheless a salutary one, and should be departed from only after careful consideration on situations arising in specific cases. The following cases announce the principles declared by this court: Pennsylvania Mining Co. v. United Mine Workers of America et al., 8 Cir., 28 F.2d 851; Aetna Life Insurance Co. v. Wharton, 8 Cir., 63 F.2d 378; Zurich General Acci-

dent & Liability Insurance Co., Ltd. v. O'Keefe, 8 Cir., 64 F.2d 768; American Surety Company v. Bankers' Savings & Loan Ass'n of Omaha, Nebr., 8 Cir., 67 F.2d 803, 804; Claiborne-Reno Co. v. E. I. Du Pont De Nemours & Co., 8 Cir., 77 F.2d 565; New York Life Insurance Co. v. Golightly, 8 Cir., 94 F.2d 316; Marion Steam Shovel Co. v. Bertino et al., 8 Cir., 82 F.2d 541.

The train on which the accident occurred left Mankato, Minnesota, about 8 o'clock on the evening of July 19, 1933. Its destination was Minneapolis. The only points on this route with which this inquiry is concerned are Chaska Hill, Eden Prairie, Hopkins, Cedar Lake, Lyndale Avenue Bridge, and the warning telltale placed 156 feet west of that bridge. Chaska Hill is 19.8 miles west of Lyndale Avenue Bridge, and Holden Street, Minneapolis, is three fourths of a mile east of that bridge. The deceased was the head brakeman, whose duty was to attend to the duties of brakeman at the head end of the train. Normally his position, while the train was in motion, was in the cab of the locomotive. At Chaska Hill he observed that a brake on one of the cars was "sticking". This was made evident by "fire flying", and Kulp dropped off to release the brake. The train did not stop at Chaska Hill, but continued without stopping to some point beyond Lyndale Avenue bridge. Kulp did not re-enter the locomotive, but caught the caboose as it passed. It is undisputed that this action of Kulp was incidental to a brakeman's duties. Chaska Hill is described as a very steep hill, and at that time the train was moving at a speed of 5 or 10 miles an hour. After leaving Chaska Hill the speed increased to 30 or 35 miles an hour, and varied within these limits.

When the train reached the East Minneapolis yards, after passing under the Lyndale Bridge at about 2:35 A. M. on July 20th, head brakeman Kulp was missing. An engine was sent back along the track, and at 4 A. M. his severed body was found partly between the rails of the eastbound track, over which the train had approached Minneapolis, and about 25 or 26 feet east of the Lyndale Bridge. From Merriam Junction, a point west of Hopkins, the train was operated over the tracks of the Minneapolis & St. Louis Railway Company, hereinafter designated as the St. Louis Company. At Hopkins the fol-

lowing warning message was received from the train dispatcher of the St. Louis Company: "Telltales down on south side of Lyndale Avenue. Bridge will not clear man sitting or standing on top of train". This message was delivered to both locomotive and caboose at 2:17 A. M. on July 20th. The negligence charged by plaintiff was the failure to communicate this warning to the deceased, who is alleged to have been struck by the sagging telltale frame, thrown beneath the train, and killed.

In support of this charge, and the allegations of his complaint, plaintiff introduced the report of conductor Helmer concerning this accident to brakeman Kulp, which was submitted to his employer, the Omaha, and likewise to the St. Louis Company. This report was in accordance with the practice obtaining, was made about 4:15 A. M. July 20, 1933, before Helmer went to his home, and was filled out upon a blank of the Omaha Company provided for use in case of personal injuries. The parts most pertinent to this inquiry are the following: After the heading "Nature of Accident"—"Evidently was on top of train and was knocked off". Under the caption "Remarks", "Dropped off on Chaska Hill seen fire flying. Caught caboose and started over the top of train too head end".

At 2 o'clock on the following afternoon of July 20th, a joint investigation was held by the Omaha and St. Louis Railways, at which the questions and answers were taken down and transcribed by a stenographer, and the statements made were signed by the employees examined. Helmer's statement, relative to the accident to brakeman Kulp about 2:25 A. M. July 20, 1933, is set out in the former opinion (8 Cir., 88 F.2d 466, 468) and will not be repeated here. In addition to the official report of the conductor in charge of the train to his employer, that Kulp, after boarding the caboose, started over the top of the train to the head end, plaintiff introduced at the former trial two witnesses, switchmen in the employ of the St. Louis Company, who were working in the Cedar Lake yard of that Company on the night of July 19, 1933. This yard is situated east of Hopkins and 1½ miles west of the Lyndale Bridge. These witnesses testified that they saw this Omaha train pass at about 2:30 o'clock of the morning of July 20th, and saw a lamp on top of the train, carried by someone, and moving toward the head or engine end of the train. Substantially this same testimony was repeated at the last trial, and was somewhat strengthened by an additional witness as to conditions on neighboring tracks.

The contention of the defendant, at both trials, was that Kulp entered the caboose at Chaska Hill and remained there until the train reached and stopped at Holden Street, at which time the caboose was standing nearly, if not quite, under the telltales in question. That he left the caboose then and proceeded toward the head of the train; that while in the caboose at Hopkins, he received and read the warning message concerning the telltales, and knew of the danger confronting him if he proceeded over the top of the train; that, therefore, no negligence on the part of defendant was shown. At the first trial two defense witnesses testified that they saw this Omaha train pass at Eden Prairie, which is between 10 and 11 miles west of the Lyndale Bridge and 6 miles west of Hopkins, and did not observe any light on top of the cars as they passed. At the second trial an additional defense witness was introduced who testified that he saw no light upon the cars as they passed Hopkins. This testimony is, of course, cumulative merely, and has no effect, as appellant insists, conclusively to destroy the effect of the testimony of plaintiff's witnesses concerning the light seen later as the train passed the Cedar Lake yard. The cases of Chesapeake & Ohio R'y. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983, and Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819, require consideration, but not unqualified acceptance of such testimony. The jury question still remained.

At the last trial testimony for the defense was added to the effect that an examination of the weather-beaten telltale disclosed no evidence that it had come into contact with any object, such as a human body, on the night of July 19th or morning of July 20th.

These two are the only matters of evidence urged by defendant as sufficient to prevent the application of the rule of law of the case on this second appeal. In our opinion, the evidence introduced at the last trial is substantially the same as that considered on the first appeal.

As substantive evidence in support of the allegations of plaintiff's petition and of the verdict and judgment responsive thereto, we find the report of the conductor, appellant's agent in charge of the train, made to both railroads on the morning of the accident, in conformity with the rule and practice, and upon the blank form in such cases provided. This report placed Kulp in the caboose at Chaska Hill, from which he started over the top of the train on the way to his position at the head end. The logical opinion of the conductor, as expressed in this report, was that Kulp "evidently was on top of train and was knocked off" and killed. We do not stress this opinion-statement as substantive evidence. It is referred to as revealing the attitude of the conductor in the early morning immediately after Kulp's death became known, when his train movement in the yards had just been concluded. This report as to the physical circumstances within the personal knowledge of conductor Helmer is admissible as substantive evidence against appellant. For this there is ample authority in both reason and decision. Vicksburg & Meridian R. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257; Hill v. Pullman Company, C.C., 188 F. 497; Baltimore & Ohio R. Co. v. Flechtner, 6 Cir., 300 F. 318.

In an action for injury by a railroad employee, "evidence of statements by the conductor and trainmaster as to the cause of the accident is admissible, where they were required by the railroad company to ascertain and report the cause of the accident, for such declarations were within the scope of their duty, and being so are declarations of the principal". Callahan v. C., B. & Q. R. Co., 47 Mont. 401, 133 P. 687, 688, 47 L.R.A.,N.S., 587. To the same effect Hilbert v. Spokane International R'y. Co., 20 Idaho 54, 116 P. 1116; Downing v. St. Louis-San Francisco R'y Co., 220 Mo.App. 260, 285 S.W. 791; Phillips v. St. Louis & San Francisco R'y. Co., 211 Mo. 419, 111 S.W. 109, 17 L.R.A.,N.S., 1167, 124 Am.St.Rep. 786, 14 Ann.Cas. 742; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400. In the latter case it is said: "Party's prior inconsistent statements, by deposition or otherwise, are admissible against him as substantive evidence in nature of admissions".

In this case, under the circumstances, the statements of the conductor of the train were admissible against the principal. Compare Bennett v. E. W. Backus Lumber Co., 77 Minn. 198, 79 N.W. 682, and Garedpy v. Chicago, M. & St. P. R. Co., 176 Minn. 331, 223 N.W. 605. The statement of the conductor at the investigation held by the railroads on the following afternoon, if not of the same evidential value as his report, is at least corroborative of the latter, and was admitted without objection. In support of Helmer's statement, that Kulp started over the top of the train toward the head end, is the testimony of two witnesses that, at Cedar Lake yard, less than 1½ miles from the menacing telltale, a lantern was seen on top of the train, moving toward the head end. At the rate the train was moving but a short time would elapse before the hazard would be reached. The location and condition of the body was sufficient to justify the finding that he was injured in the manner charged. Myers v. Pittsburgh Coal Co., 233 U.S. 184, 34 S.Ct. 559, 58 L.Ed. 906; Choctaw, Oklahoma, etc., R. Co. v. McDade, 191 U.S. 64, 24 S.Ct. 24, 48 L.Ed. 96; Chesapeake & Ohio R'y. Co. v. Cowley, 4 Cir., 166 F. 283; Perkins v. Northern Pacific R'y. Co., 9 Cir., 199 F. 712.

It is the duty of this court, as it was of the trial court, to take the most favorable view of the plaintiff's evidence and of the inferences reasonably and justifiably to be drawn therefrom, and we cannot hold that the verdict was unsupported if there was before the jury any substantial evidence proper for admission. Humes v. United States, 170 U.S. 210, 18 S.Ct. 602, 42 L.Ed. 1011; Worthington v. Elmer, 6 Cir., 207 F. 306.

Deceased was confronted by an abnormal condition sufficient to cause his death. Under all the circumstances detailed in evidence it was the probable and proximate cause. The matter was duly and properly submitted to the jury and resolved by it.

As has been stated the defense interposed was (1) that deceased rode in the caboose from Chaska Hill until the train stopped at Holden Street with the caboose standing practically under the defective telltale; that he received and read the warning notice at Hopkins, and, therefore, no negligence was shown; (2) that there was no substantial evidence that Kulp did not receive notice of the warning order, or that contact with the telltale frame was the proximate cause of death. We have considered the character of plaintiff's evi-

dence at some length, and now refer to that offered by defendant in opposition thereto.

The testimony relied upon to sustain the theory of the accident presented by defendant is that of conductor Helmer, rear-brakeman Bland, and engineer Martinson. Both Helmer and Bland testified that Kulp boarded the caboose at Chaska Hill, remained thereon through Hopkins, and until the train is claimed to have stopped at Holden Street with some of the cars standing under the Lyndale Avenue Bridge. The statements of Helmer to the contrary in his report of the accident, and in the investigation held the day after the accident, have already been referred to. He then said that Kulp dropped off the locomotive at Chaska Hill, boarded the caboose, took a drink of water, "sat there a few minutes and started out, and that was the last he saw of him until we got to East Minneapolis". He said much more to the same effect in the two statements. Rear brakeman Bland, at the investigation, also stated that at the foot of Chaska Hill, Kulp left the caboose and started over the cars forward to the engine, and that he (Bland) did not see Kulp after that. Seeking to explain these contradictions, Helmer testifies that as soon as he and Bland knew, or at least thought, that Kulp had been killed, they had an understanding, and agreed that they would report to the company that they had not seen Kulp after they left Chaska Hill; that he made this false statement, in which Bland joined, to protect his job, thinking that, if he had not seen Kulp since the warning was delivered to him at Hopkins, he could not be held responsible for his failure to warn the head brakeman. Inasmuch as his responsibility to advise all trainmen of such a warning order was a continuing one, the statements made in report and investigation fell short of excusing the delinquency. The liability of the defendant still remained. If protection to job was the desideratum, the fact, if true, that deceased received the warning, as later testified, would seem to have suggested the sounder and more obvious protection at the outset.

The jury evidently took the view that both conductor and brakeman Bland, at first thought, on reaching Minneapolis, reported the facts truthfully, as was to be expected, and that their subsequent state-ments were changed to meet the exigencies of the situation as later realized.

If Kulp, after dropping off at the foot of Chaska Hill, entered the caboose, as without dispute he did, then it would have been impossible for him to reach the point just east of the Lyndale Bridge where his body was found, except by going over the top of the cars unless the train stopped somewhere. There is no claim that a stop was made before reaching Holden Street. At the trial, conductor Helmer, brakeman Bland, and engineer Martinson testified that the train did stop at Holden Street for from three to five minutes. In the investigation the day following the accident Helmer was asked if the train stopped for this stop board and stated that he did not think it came to a full stop, but merely slowed up. Witnesses at the trial testify that Helmer, two days after the accident, told them that the train did not stop at Holden Street, and was traveling at the rate of 5 or 10 miles per hour while passing under the Lyndale Bridge.

At the last trial engineer Martinson testified that the train stopped at Holden Street just before passing under the Lyndale Bridge. Both appellee and his wife testify that, before trial, Martinson told them that the train did not stop at Holden Street, the reason being that "they were signalled to go ahead by the flagman". Martinson testified at a former trial of this case that the train did not stop at Holden Street. His explanation of this change of testimony is that at the investigation hearing, July 20, 1933, the fireman told him he was mistaken and that the train did stop at the street. Nevertheless, at another trial of this case (this is the fourth) in 1935, nearly two years later, he again testified that the train did not stop. Because of these substantial contradictions in statement and testimony, these three defense witnesses are seriously discredited. Counsel for appellant nevertheless seizes upon this situation to urge that the impeachment of these witnesses leaves plaintiff without substantial evidence of negligence and proximate cause; that because of such impeachment plaintiff cannot place reliance upon any statement from that source.

We have already shown that plaintiff's case is not without substantial evidence to sustain it; but, in any event,

this contention of appellant proceeds upon the theory that, in case of impeachment, the testimony of the discredited witness not only may, but must be rejected in toto. The applicable rule is not necessarily so drastic. Extra-judicial testimonial statements are rejected primarily because of the hearsay rule; but in many cases this rule is relaxed, especially in the case of such statements made by a party or his agent, and where opportunity for confrontation and cross-examination has been afforded and exercised, as in this case. After stating the orthodox rule with respect to such extra-judicial statements, Mr. Wigmore says: "It does not follow, however, that prior Self-Contradictions, when admitted, are to be treated as having no affirmative testimonial value, and that any such credit is to be strictly denied them in the mind of the tribunal. The only ground for doing so would be the Hearsay Rule but the theory of the Hearsay Rule is that an extra-judicial statement is rejected because it was made out of court by an absent person not subject to cross-examination. Here, however, by hypothesis, the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the Hearsay Rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extra-judicial statement as it may seem to deserve." 2 Wigmore on Evidence, 2d Ed., Sec. 1018 (B).

The Supreme Court of Missouri agrees with Mr. Wigmore in the following language: "The former statements are entitled to some weight as establishing the facts stated—that is why they tend to discredit the witness—and the jury have the undoubted right in the light of all the evidence to find which version of the facts is correct". Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400, 411.

While the plaintiff is not driven to depend upon all these contradictory statements for substantial support in the evidence, we believe this is a case which warrants the recognition of some weight to them in determining which version of the facts is correct.

In London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 332, this court said: "Viewing a trial as a sporting event in which only the parties have any interest, the rule might be adhered to,

like one of the rules of any game. The purpose of a trial, however, is to seek for and, if possible, find the truth and to do justice between the parties according to the actual facts and the law, and any rule which stands in the way of ascertaining the truth and thus hampers the administration of justice must give way".

We still adhere to this rule. Upon this record the jury could not well have found other than as it did. It follows that the judgment should be affirmed and it is so ordered.