ARCHER–DANIELS–MIDLAND COMPANY,

v.

R. C. PAULL, Virginia Paull, and Paull's Hatchery, Inc.

Civ. A. No. 473.

United States District Court
W. D. Arkansas,
Harrison Division.

Nov. 17, 1961.

Fitton & Adams, Harrison, Ark., for plaintiff.

Crouch, Jones, Blair & Cypert, Springdale, Ark., J. E. Simpson, Berryville, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

The parties have been unable to agree upon the terms and provisions of a judgment to be entered upon the mandate of the United States Court of Appeals for the Eighth Circuit, issued September 27, 1961, and filed herein on September 29, 1961.

The controversy between the parties was heard on November 6, 1961, and at the conclusion of the hearing, the court orally announced certain conclusions, but upon further consideration the court, on November 13, 1961, entered an order striking the oral statement and directions as to the terms and provisions of the judgment announced on November 6, 1961, at the conclusion of the hearing, and now, having fully considered the contentions of the parties and the applicable law, the court files herein this opinion setting forth the terms and provisions which should be included in the judgment to be rendered herein.

The case was originally tried to this court without the intervention of a jury, and on October 26, 1960, the court filed its opinion and entered judgment for the defendants in accordance with the opinion (D.C.W.D.Ark.1960, 188 F.Supp. 277). As set forth in finding of fact No.

6 (188 F.Supp. 281), the trial court found that late in November of 1958, the plaintiff entered into a valid contract with the defendants, whereby the plaintiff agreed to finance the defendants during the turkey growing season of 1959, and the details of such contract are set forth in said finding.

The court also found that on March 13, 1959, the plaintiff definitely and completely terminated the agreement to finance the defendants in their turkey program for the year 1959, and as reflected by finding of fact No. 12 (188 F.Supp. 282-3), the defendants, upon receiving such information, "attempted to make other arrangements for financing the 1959 range turkey program, but to no avail. Commercial banks generally do not engage in such financing, and the other feed manufacturers operating in the area had already allocated their available funds for the 1959 turkey season, and therefore could not extend financing to Paull individually or to the Poor Boy Feed Company. It is the practice of the turkey feed manufacturing companies to allocate the funds available for financing turkey flocks prior to January 1 of each year. * * *

"At the time of the termination of plaintiff's feed financing program, R. C. Paull, Poor Boy Feed Company, and Paull's Hatchery, Inc., were ready, willing and able to perform the contract agreements."

The conclusions of law, following the findings of fact and the discussion thereof, appear beginning at page 288 of 188 F.Supp. In effect, the court held that the agreements entered into by the parties constituted and were valid contracts; that after allowing the plaintiff credit for the amount of the indebtedness due it from the Poor Boy Feed Company on account of the 1958 operations, that the defendant, R. C. Paull, as liquidating partner of said Poor Boy Feed Company, should recover $36,566.02; that R. C. Paull, individually, should recover $15,-661.40, after allowing plaintiff credit for the indebtedness owed by Paull to it on the 1958 operations; and that Paull's

Hatchery, Inc., was indebted to the plaintiff in the total sum of $18,151.47, which should be offset by $17,200 damages which the court adjudged Paull's Hatchery, Inc., had suffered by breach of the contract, thus leaving, after calculating interest and attorneys' fees, a net amount due the plaintiff from Paull's Hatchery, Inc., of $2,583.76.

An appeal was prosecuted from the judgment of the trial court (8 Cir., 1961, 293 F.2d 389). In its opinion beginning at page 389, the Court of Appeals states the questions involved in the appeal, and on page 391 of 293 F.2d quotes from finding of fact No. 2 of the trial court's opinion, appearing at page 279 of 188 F.Supp. At page 392 of 293 F.2d the Court of Appeals stated:

"The controverted issues arose out of the counterclaims asserted by the defendants R. C. Paull and Paull's Hatchery, Inc. Those issues were: 1. Whether ADM had, in November 1958, entered into complete and binding oral contracts (a) to finance R. C. Paull during 1959 in the raising of 20,000 range turkeys, (b) to finance Poor Boy Feed Company in raising 40,000 range turkeys, and (c) to finance the purchase from Paull's Hatchery, Inc. of 90,000 turkey poults, as alleged in its counterclaim. 2. Whether, if such financing contracts were entered into, the failure of ADM to perform them entitled the counterclaimants to damages measured by the profits they might or would have made had the contracts been fully performed by ADM."

At page 393 of 293 F.2d the court said:

"Had this case been tried to a jury, and had ADM moved for a directed verdict in its favor on the counterclaims at the close of the evidence, on the ground that it conclusively appeared that ADM had not entered into any such oral agreements as the court found ADM had made with the counterclaimants in November, 1958, for the raising of

322

turkeys in 1959, we think the court would not have erred in denying the motion. In other words, under the evidence we regard the question of the existence or nonexistence of the alleged contracts as a doubtful question of fact for the trier of the facts, which in this case was the trial court. We cannot rule that its determination of this issue was clearly erroneous, even though the evidence would have sustained a contrary finding. * * * "

At page 395 of 293 F.2d the court said:

"The vital question in this case is, we think, whether, under the evidence and the applicable substantive law of Arkansas, ADM can be held legally liable in damages for profits which the trial court found the defendants-counterclaimants would have earned had ADM carried out its contracts to finance their turkey-raising programs in 1959. * * * "

At page 397 of 293 F.2d the court said:

"It is not conceivable to us that at the time the contracts asserted in the counterclaims were entered into the parties could have contemplated that there was any reasonable certainty that the fulfillment of the contracts would result in profits. * * *

"Our conclusion is that there was not an adequate basis in the evidence for a determination by the trial court that at the time ADM agreed to finance the turkey-raising programs of the defendants-counterclaimants, the parties contemplated that profits were reasonably certain to result or that any anticipated profits were 'certain both in their nature and in respect to the cause from which they' were to 'proceed.' That 1959 turned out to be a profitable year in Arkansas generally for turkey raisers whose flocks came through in good condition and were marketed at the proper times, does

not, in our opinion, justify or require the award of any such damages, for loss of profits, as were assessed against ADM in this case because of the nonfulfillment of its contracts to finance the defendant-counterclaimants' planned turkey-raising activities during 1959.

"Concededly, the measure of damages for the breach of a contract to loan money is the difference between the agreed interest rate and that which would be required to procure the money elsewhere, not exceeding the highest rate permitted by law. See Columbian Mut. Life Assur. Soc. v. Whitehead, 193 Ark. 598, 101 S.W.2d 455.

"So much of the judgment as is appealed from is reversed, and the case is remanded for the ascertainment of whatever general damages may, under applicable Arkansas law and consistently with this opinion, be due to the defendants R. C. Paull and Paull's Hatchery, Inc., upon their counterclaims."

▪ At the hearing on the mandate on November 6, 1961, the defendants introduced the testimony of ten witnesses, and the plaintiff introduced the testimony of three witnesses. The testimony of the defendants' witnesses was admitted over the objections of the plaintiff, and likewise the testimony of the witnesses adduced by the plaintiff was admitted over certain objections of the defendants. The objections were based upon the contention that the directions to the trial court contained in the mandate were specific, and that such testimony was inadmissible and incompetent, because the facts sought to be established by such testimony had been considered and passed upon by the Court of Appeals in its opinion, hereinbefore referred to.

▪ This court recognizes that under the law of the case rule the decision of an appellate court is the law of the case on points presented and must be followed in all subsequent proceedings in that case.

In Aetna Life Ins. Co. v. Wharton, 8 Cir., 1933, 63 F.2d 378, the court at page 379 said:

"It is a well-established rule that the decision of an appellate court is the law of that case on the points presented, to be followed in all subsequent proceedings in that case, in both the trial and the appellate court." (Citing cases.)

In New York Life Ins. Co. v. Golightly, 8 Cir., 1938, 94 F.2d 316, the court at page 317 said:

" * * * Since, as to the defense of misrepresentation, this is the identical question presented on the former appeal, the decision there is the law of the case, unless the evidence introduced at the second trial is substantially different from that considered upon the first appeal." (Citing cases.)

In Western Fire Ins. Co. v. University City, 8 Cir., 1942, 124 F.2d 698, the court at page 699 said:

" * * * Ordinarily, what has been decided on one appeal can not be relitigated on a second trial of the same suit, unless the evidence introduced in the second trial is substantially different from that considered on the first appeal." (Citing cases.)

The court further said:

"True, the doctrine of the law of the case is a rule of practice and not a limitation of power, yet it will not, except for very cogent reasons, be departed from. Chicago, St. P. M. & O. Ry. Co. v. Kulp, 8 Cir., 102 F.2d 352, 133 A.L.R. 1445; Pennsylvania Mining Co. v. United Mine Workers, 8 Cir., 28 F.2d 851, 853. In the last cited case, this court said:

" 'There should be and is an exception to this rule, viz.: If convinced that a former decision is clearly erroneous and unsound, and works manifest injustice to the parties, an appellate court should not deem itself bound as to such parties by the rule of "law of the case." ' "

■ The testimony that was introduced at the hearing clearly and unmistakably established three facts, viz.: (1) that it was in contemplation of the plaintiff and the defendants at the time the contracts were entered into that all parties expected to make a profit; (2) that the growing, feeding and marketing of turkeys is not any more hazardous or uncertain than countless other business enterprises; and (3) that because of the custom and practice of feed companies, as set forth in the trial court's first finding of fact, hereinbefore referred to, the defendants were unable to obtain sufficient financing to carry on the business which would have been carried on had the plaintiff not breached the contracts.

■ In admitting such testimony this court realized that it is bound by the mandate, and that it can only enter in this case such judgment as it was directed to enter by the mandate, but the appellate court is not bound by the law of the case rule to the extent that the trial court is bound.

In Mantle Lamp Co. of America v. Knapp-Monarch Co., 7 Cir., 1936, 81 F.2d 428, the court at page 430 said:

"On a previous appeal from an order refusing to grant a temporary injunction in the instant suit, this court reversed the action of the District Court and ordered the issuance of a temporary injunction. This ruling became the 'law of the case,' and we think the District Court properly granted the decree from which this appeal is taken. In view of that ruling by this court, we find no error in the ruling of the District Court. This would result in the affirmance of the decree but for the existence of a duty, as we view it, to review our own ruling. The law of the case may be binding upon the District Court and yet not so upon this court. In Luminous Unit Co. v. Freeman-Sweet Co., [7 Cir.,] 3 F.(2d) 577, we had occasion to consider the effect of the law of the case and there refused to apply it."

324

In Chicago, St. P., M. & O. Ry. Co. v. Kulp, 8 Cir., 1939, 102 F.2d 352, the court at page 354, 133 A.L.R. 1445, said:

"This court has repeatedly held that the decision on former appeal is the 'law of the case' on a question presented in that former appeal, unless the evidence introduced at the subsequent trial is substantially different from that considered on the first appeal, and must be followed in all subsequent proceedings in such case in both district and appellate courts, unless that decision is clearly erroneous and works manifest injustice. The introduction of new testimony at the second trial which is merely cumulative will not prevent the application of this doctrine on the second appeal. While this rule of practice is not a limit of power, it is nevertheless a salutary one, and should be departed from only after careful consideration on situations arising in specific cases. The following cases announce the principles declared by this court: Pennsylvania Mining Co. v. United Mine Workers of America et al., 8 Cir., 28 F.2d 851; Aetna Life Insurance Co. v. Wharton, 8 Cir., 63 F.2d 378; Zurich General Accident & Liability Insurance Co., Ltd. v. O'Keefe, 8 Cir., 64 F.2d 768; American Surety Company v. Bankers' Savings & Loan Ass'n of Omaha, Nebr., 8 Cir., 67 F.2d 803, 804; Claiborne-Reno Co. v. E. I. Du Pont De Nemours & Co., 8 Cir., 77 F.2d 565; New York Life Insurance Co. v. Golightly, 8 Cir., 94 F.2d 316; Marion Steam Shovel Co. v. Bertino et al., 8 Cir., 82 F.2d 541."

In Commercial Nat. Bank in Shreveport v. Connolly, 5 Cir., 1949, 176 F.2d 1004, the court at page 1006 said:

"The doctrine of the law of the case usually raises a disinclination on the part of an appellate court to re-examine its own prior legal pronouncements in a case, but the doctrine does not destroy its power to do so. Five judges of this Court, sitting en banc, have the power, and a majority has the inclination, under the special circumstances of this case, to re-examine questions decided on a former appeal by a divided three-judge panel where several issues and much evidence appear in the second appeal that were not directly presented in the first."

In Electrical Research Products v. Gross, 9 Cir., 1941, 120 F.2d 301, the court at page 308 said:

"Here again it is urged that the law of the case has been violated. Appellant refers to the discussion of the measure of damages, 86 F.2d page 930. Obviously, the discussion is dictum. And if it be construed as denying the right to recover lost profits in a case of this kind, we think it was ill-advised and should not be followed."

It does not appear that the question as to whether the parties hoped, expected, or intended to make a profit from the performance of the contracts was before the appellate court on the appeal, but the court concluded and held that it was not conceivable that at the time the contracts asserted in the counterclaims of the defendants were entered into that the parties could have contemplated that there was any reasonable certainty that the fulfillment of the contracts would result in profits.

At page 397 of 293 F.2d the court further stated:

"* * * It seems obvious to us from the evidence that the raising of turkeys is not a stable business but a speculative one, and that profits depend upon many factors, including management, market conditions, the health of the flocks, and other contingencies."

This court is of the opinion that in view of the facts established by the testimony introduced at the hearing, and the fact that the contracts were valid contracts and were breached by the plaintiff, the appellate court may desire to re-

view its former opinion as authorized by the authorities cited above.

Under the mandate this court is required to determine the general damages suffered by the defendants because of the breach of the contracts, and the court held that, "the measure of damages for a breach of a contract to loan money is the difference between the agreed interest rate and that which would be required to secure the money elsewhere, not exceeding the highest rate permitted by law."

██ The court is unable to determine any general damages in the form of interest for the reason that the contract was not one to loan money. In fact, the representatives of the plaintiff testified that the plaintiff was not in the money-lending business, but that its business was one of manufacturing and furnishing feed and medicine to growers in the feeding, growing and marketing of turkeys, and it was impossible for the defendants to obtain financing elsewhere for the reasons hereinbefore stated. The losses, except as set forth in the next paragraph, resulted from loss of profits caused by the breach of the contract by the plaintiff.

██ At the conclusion of the hearing, the court discussed with counsel for the parties the question of whether Paull's Hatchery, Inc., sustained any general damages by reason of the breach of the contract, and the court finds that the defendant, Paull's Hatchery, Inc., expended $10,000 in preparing to perform its part of the contract.

Therefore, in accordance with the mandate, the judgment heretofore entered by this court on October 26, 1960, is vacated, set aside and held for naught, and judgment should be entered herein in lieu thereof as follows:

On October 26, 1960, the date of the original judgment herein, the defend-ants, Paull's Hatchery, Inc., and R. C. Paull and Virginia Paull, were indebted to the plaintiff in the sum of $19,783.76, principal and interest, and from this sum should be deducted the amount of the general damages which the court has found that Paull's Hatchery, Inc., suffered by reason of the breach of contract by plaintiff, and after deducting said sum from the amount of said indebtedness, there remains due the plaintiff from the defendant, Paull's Hatchery, Inc., and the defendants, R. C. Paull and Virginia Paull, guarantors, the sum of $9,783.76, for which the plaintiff is entitled to judgment against said defendants, with interest thereon from October 26, 1960, until paid.

On October 26, 1960, the defendant, R. C. Paull, as liquidating partner of the Poor Boy Feed Company, was indebted to the plaintiff in the sum of $13,433.98, principal and interest, and since the court has found that no general damages were suffered by the defendant, R. C. Paull, liquidating partner of Poor Boy Feed Company, judgment should be entered in favor of the plaintiff against the defendant, R. C. Paull, in the sum of $13,433.98, with interest thereon from October 26, 1960.

On October 26, 1960, the defendant, R. C. Paull individually, was indebted to plaintiff in the sum of $9,338.60, and plaintiff is entitled to judgment against said defendant, R. C. Paull individually, for said sum with interest thereon at the rate of 6 percent per annum from October 26, 1960.

And it appearing from the mandate that the costs of the appeal were adjudged against all the defendants, judgment should be entered against all the defendants for said sum of $625.25, with interest thereon from the date of judgment at the rate of 6 percent per annum.