TOL v. UNITED STATES.

No. 11789.

Circuit Court of Appeals, Ninth Circuit.

March 9, 1948.

Charles H. Fish, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal. (John H. Black, Edward R. Kay, and Henry W. Schaldach, all of San Francisco, Cal., of counsel), for appellee.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, a sailor, appeals from a decree (a) denying him recovery under the Jones Act, 46 U.S.C.A. § 688, for injuries claimed to have been received on the steamer "H. Weir Cook" a Liberty ship on a voyage in the South Pacific Ocean while proceeding toward Canton Island in the Phoenix Group and (b) awarding him maintenance for a year.

While pulling an inch and a half mooring cable from the hold over a hatch covering, the cable in some way struck appellant on the left temple. There was no contusion, but a small blue spot appeared on the skin lasting a day. The blow did not interfere with his work, and he continued for two days and then developed constipation at Canton Island, where he was treated for that affliction for several days. He then returned to the vessel and continued to work till the vessel arrived at Honolulu, where a paralysis of the left side developed. He left the ship and was hospitalized at Queen's Hospital. He remained at the hospital in Honolulu as an in-patient until October 16, 1944, and was then transported by vessel to San Francisco and admitted on October 23, 1944, as an in-patient at the

Marine Hospital there. He was discharged from further hospitalization and treatment October 30, 1944. On that date he returned to his home in Lyle, Washington. The paralysis proved to be permanent, and there seems a small likelihood that appellant, now over sixty years old, will be able to engage in any vocation requiring physical effort.

Appellant claims the shipowner was negligent in failing to provide the vessel with certain reels to aid in the handling of mooring cables, which would have prevented appellant's injury, and, hence, that the vessel was unseaworthy in that respect. The Court found to the contrary, that the ship was seaworthy in the challenged respect.

We think that there is abundant evidence to support this finding of the Court in the testimony of marine experts that the handling of the mooring cables without reels was a customary and safe method. There was further testimony that on some hundreds of Victory and Liberty ships there were no such appliances.

The Court further held: "It is not true that the said illness, sickness, injury or disability suffered by libelant and as alleged in the libel, was caused by being struck in the head by a steel wire cable or mooring line aboard the said vessel." This finding is supported by an exhibit introduced in evidence by appellant of the report of the U. S. Public Health Service physician who attended him at Queen's Hospital, which concluded: "X-rays of the skull, spinal puncture, and assorted laboratory work, in addition to the physical examination, led to a diagnosis of cerebral and generalized arteriosclerosis with cerebral thrombosis and encephalomalacia Discharged for transfer to mainland hospital."

It was further supported by the testimony of a qualified neuro surgeon, Dr. Raaf, who agreed with the diagnosis of the exhibit introduced by appellant. He testified that in his opinion the blow on the head had nothing to do with the subsequent paralysis, stating, inter alia, that brain injury from a blow on the left temple would cause paralysis on the right side of the body, whereas here the paralysis was on the left side. The Court was entitled to infer that the prior arteriosclerosis caused the paralysis, and that the blow in no way contributed.

Appellant complains that the testimony of Dr. Raaf comes as a surprise and asked a continuance to obtain further testimony, claiming that an earlier letter from him did not support his testimony. We cannot agree that there was surprise, for that letter concluded: "The onset of the illness, so far as the history is concerned, is typical of a thrombosis of a cerebral vessel and it seems to me very unlikely that trauma to the left side of the head had anything to do with the onset of his trouble."

The Court awarded maintenance for a year after the last discharge from the Marine Hospital in San Francisco. The final decree of May 22, 1947, further ordered that the respondent is not liable to libelant "for further maintenance, wages or for nursing care." Appellant contends that he may have a future claim for maintenance and care and cites Calmar S. S. Corporation v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993.

It was found in that case as here that the disability arising during the voyage was not occasioned by anything occurring in the voyage. The Calmar case differs in the important respect that there, when discharged from the hospital after but five months, the injured man was to return for further treatment. Here appellant's hospitalization was complete, and the testimony is that his condition was practically stationary.

The rule as stated in the Calmar case at page 530 of 303 U.S., at page 654 of 58 S.Ct. is: "But we find no support in the policies which have generated the doctrine for holding that it imposes on the shipowner an indefinitely continuing obligation to furnish medical care to a seaman afflicted with an incurable disease, which manifests itself during his employment, but is not caused by it. So far as we are advised, it is without support in the authorities. We can find no basis for saying that, if the disease proves to be incurable, the

duty extends beyond a fair time after the voyage in which to effect such improvement in the seaman's condition as reasonably may be expected to result from nursing, care, and medical treatment. This would satisfy such demands of policy as underlie the imposition of the obligation. Beyond this we think there is no duty, at least where the illness is not caused by the seaman's service. * * *

"The seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained."

■ However, the Supreme Court contemplates that even after a reasonable allowance for the immediate future, there may exist a liability for further relief in another action, for in its order for reversal it provided, concerning the further proceedings, that they were "without prejudice to any later suit by respondent to recover maintenance and cure to which he may then be entitled."

■ While we cannot see how much liability can arise in the future, the relief sought by the libel as last amended is only for maintenance and cure to the time of the trial. Since further relief was not in issue, we will order stricken from the final decree of May 22, 1947, the last eight words thereof.

■ The unfortunate man was assisted by his wife for a while in putting on his clothes. He claims he is liable to her as for nursing services, and, hence, the ship is liable to him. The Court held that he could not recover and that real nursing services were not needed. In this we agree.

■ Appellant also here claims the award of the year's maintenance should be the amount of his wages, $5.35 per day, and not the $3.50 awarded. However, it appears he accepted the amount awarded and has made no assignment of error as to the insufficiency, but confines his appeal to the "one or more questions" as provided in our rule 36.

The decree is ordered amended as indicated and as so amended is affirmed.

Neither party shall recover costs.