Laurice V. COX, Appellant,

v.

ESSO SHIPPING COMPANY, Appellee.

No. 16382.

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1957.

Arthur J. Mandell, Mandell & Wright, Houston, Tex., for appellant.

J. M. Cunningham, New York City, James K. Nance, Baker, Botts, Andrews & Shepherd, Houston, Tex., Kirlin Campbell & Keating, Vernon S. Jones, New York City, for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal by Cox from an unsatisfactory judgment for damages under the maritime law for unseaworthiness and under the Jones Act, 46 U.S.C.A. § 688, for negligence and for maintenance and cure presents primarily procedural errors in the exclusion of evidence and in instructions of the Court to the jury. For the reasons given we conclude that the main cause must be remanded for a new trial. Little save the existence of the parties, the name and size of the vessel, and the fact of injury was admitted. In this climate of controversy, discussion of the facts is therefore usually a recital of evidence from which the asserted favorable inferences could be drawn.

Cox, an experienced seafarer, holding a Chief Officer's license, was serving aboard Esso's vessel MS Esso Augusta as an able-bodied seaman. He received substantial injuries April 22, 1953, when he fell some twenty-five feet to the deck from the floodlight crossarm standard of the foremast while he was engaged in the work of rigging a bosun's chair for later use by the electrician.

Although he protested against its use, Cox was required to use the gear which the bosun selected from the ship's locker. This comprised a block with open hook instead of a shackle, a piece of marlin mousing, a 100-foot gantline, a short endless rope strap, and a bosun chair with bridle. He complained principally of the block with an open hook, but, so he says, dutifully obeying the order of his superior, the bosun, when his complaint was ignored or overruled, he proceeded up the mast to do the job.

Once aloft his position was awkward, if not precarious, as the light standard cross tree was an inverted T bar upon which he had to sit. While thus perched, he passed the strap over the crossarm and put the hook of the block through its bight. He then put a marlin "mousing" across the open hook. The purpose of this was to keep the strap from coming out of the hook or the hook being pulled off the strap. After passing one end of the gantline through the block, he made

it fast to the bridle. To test the rigging, with his feet on the bosun chair and while gripping tightly (marrying) the standing and free part of the gantline, he put his weight on it. It cocked suddenly toward the left (port), and down came Cox, the strap, the block, gantline and bosun chair. The mousing was off the hook.

In his double-barreled attack of unseaworthiness and negligence, Cox' principal claim was that the compulsory use of an open hook block when a shackle type block was available constituted an unseaworthy condition or appliance imposing the absolute liability of that doctrine, and if not that, at least this conduct was negligent. As might be expected, in this battle each had its protagonists, lay and expert, the one claiming, the other disputing. By a special interrogatory under Fed.Rules Civ.Proc. rule 49(a), 28 U.S.C.A. and the accompanying instruction, the Court, over the strenuous objection of Cox as to their sufficiency, submitted the question of seaworthiness merely in terms of the reasonable suitability of the gear. The jury declared this open hook block reasonably suitable, i. e., seaworthy. Other special issues submitted the question of Esso's negligence. The Trial Court, briefly summarizing a few of Cox' charges of fault and expressly leaving the rest to the recollection of the jury, followed an unusual method. This was undoubtedly meant to eliminate needless listing of the charges of negligence, only one or two of which the jury would likely consider seriously. Undoubtedly, it was also thought that this would further insulate the jury from a conscious appreciation of the legal significance of their findings. In determining "In what manner and respect was the defendant negligent", the verdict form left it to the jury to write in the particulars in their own words. To this the jury found and wrote (Issues 3 and 4) that Esso was negligent in "Improper supervision."

In the same fashion the Court submitted the question of Cox' contributory negligence.[1] By the several issues the

1. Because of its interlacing importance, we set out the Court's instruction on the contributory negligence issue (No. 6):

"In No. 6 I inquire as to whether the plaintiff himself was negligent in some respect, as I inquired of you in the preceding questions about the defendant: Was the plaintiff negligent in any respect immediately before or at the time of the accident in question of April 22, 1953."

"And you will reply that the plaintiff was negligent or the plaintiff was not.

"The burden of proof is upon the defendant in this instance to prove by a preponderance of the evidence that the plaintiff was negligent.

"Negligence here means, as it did before, a want of ordinary care.

"In the event you find the plaintiff negligent, I ask you to set out the grounds of such negligence, as I did when I inquired about the negligence of the defendant.

"It is the defendant's theory here, they argue to us, that the plaintiff was negligent in a number of respects. As I understand their contention, *it is that the plaintiff had the same opportunity to select the tackle and equipment that was to be used as the bosum did and* *that it was there and available, and if there was negligence in picking out one particular block over the other, then that likewise was chargeable to the plaintiff.* The defendant contends the plaintiff was negligent in the way he tied the mousing around the hook after he had ascended the mast. They contend he was negligent in failing to test it with his thumb in some fashion, and I am sure you will recall other grounds of negligence that the defendant relies on and with which they charge the plaintiff in their pleadings and in the evidence and in the argument of counsel.

"I likewise have provided three spaces for you to insert the grounds of negligence of the plaintiff, if you so find, and I will tell you here, too, I am not telling you or suggesting that the plaintiff was negligent in three particulars. I am simply making the space available in the event you should so find." (Emphasis supplied.)

That Court, counsel, and perhaps the jury, understood this instruction to relate specifically to the failure of Cox personally to pick out a suitable block and negligence in his picking out one block over the other seems clear from the precise exceptions taken to this charge.

jury found, under the Jones Act comparative negligence concept, that Cox' negligence contributed 75% to his injuries. In response to the special interrogatory, "In what manner and respect was the plaintiff negligent," the jury's freehand answer (Issue No. Seven) was:

"Not determining gear to be used was both adequate and properly secured before attempting to enter boatswain's chair."

Whether the jury, acting here not merely as a scrivener as in the usual case to record its conclusions within the framework carefully prescribed (e. g., general verdict form or specific answers from which to choose), but as its own grammarian and legal lexicographer as well, meant this to be as literally stated is itself a question for later discussion. Cox insists that the jury convicted him of negligence in not determining that the gear was *adequate* and that such inadequate gear was not properly secured. Esso urges that it is a case of bad grammar and all that is missing is an *ly* to change adjective to adverb so that it would read "was both adequate*ly* and properly secured * * *."

After some post-trial maneuvers a judgment for $16,250 damages ($65,000 reduced 75% for Cox' negligence) and maintenance and cure up to April 1, 1959, as found by the jury, at a stipulated daily rate totaling $9,906 was entered, and the maintenance award was paid and satisfied.[2]

This is a sufficient portrayal of the atmosphere of this case to indicate that the battle, however stated, was fought largely over Cox' contention that an open hook block was unseaworthy or faulty and Esso's insistence that it was customary, usual and suitable. This is important for it sets the stage for Cox' first, and serious, complaint that an impressive piece of evidence was erroneously excluded. Several types of evidence might or could be used by Cox to establish his position. This included, as used, factual and expert testimony. It also included, here important, the possible availability of evidence, frequently of impressive significance—that of admissions.

For an admission, rightly understood but so often confused, in its classic prototype is merely—but significantly— a position taken by the adversary, either personally or through an authorized agent, which is contrary to and inconsistent with the contention now being made in the litigation. It is that simple. It need not have been, as is so often said, an admission against interest, nor is there a need to lay a predicate for its use. All that is needed is an authoritative statement by the adversary inconsistent with the contemporary litigation position.

Cox insists that what he tendered was just such an admission. For the paper, if not subject to the infirmity thought by the Trial Court to exist, was strong evi-

---

The exceptions stated that since " * * under the law * * * [Cox] * * * was dutybound to take and accept the gear given him * * * the failure of the plaintiff to select his own gear * * * cannot possibly constitute negligence * * *."

2. Subsequent to judgment Esso, on May 16, 1956, made a "Tender of Payment' of Final Judgment" by depositing in the registry of the court the sum of $26,156 but expressly subject to these conditions:

"(1) Plaintiff may take the funds so tendered for item (a) (compensatory damages for $16,250) or item (b) (maintenance for $9,906), or both items.

"(2) If plaintiff takes either item (a)

or item (b), or both, then the judgment with respect to such item, or items, so taken shall be deemed fully satisfied so that further recovery is thereby precluded; but each item as indicated shall stand separately, and acceptance of one item shall not prejudice plaintiff's right to reject the other item."

. Subsequently, June 25, 1956, Cox withdrew the sum of $9,906 for maintenance upon this representation in his petition for withdrawal:

. "Plaintiff would show there are no contentions made by either party insofar as the amount of judgment entered by the Court in the sum of Nine Thousand Nine Hundred Six Dollars ($9,906.00) is concerned. Therefore, the same ought to be paid to the plaintiff."

dence that an open hook block was unsuitable and, on the contrary, a block with shackle was the proper appliance. The precise evidence proffered was a duplicate original report, whose authenticity was expressly stipulated, made by the master of the MS Esso Augusta and signed and filed by him as a part of his official duties.

■ The report satisfies the authoritative character of an admission made by one on behalf of another, in this case, the employer-shipowner. The master of an American vessel, navigator, business man, fiscal representative, employer of seamen, empowered to sacrifice ship, cargo, or freight in general average or salvage to save the other, to pledge the vessel under bottomry, to claim and release her from legal custody, " * * * lord of his little world * * * master in every sense of the word," United Geophysical Co. v. Vela, 5 Cir., 231 F.2d 816, 819, 1956 A.M.C. 745, 748, is authorized not only to manage and operate the vessel. He is authorized as well to make declarations in her behalf and that of her owners. For as Judge Borah, long experienced in the trial of maritime cases put it, " * * * I take it to be well settled that in admiralty pro hac vice the master is the owner, and any declarations or admissions made by him are admissible as evidence against the owner. The Potomac, 8 Wall. 590, 19 L.Ed. 511; The Rosalie M., 5 Cir., 12 F.2d 970; The City of Rome, D.C., 24 F.2d 729, 1928 A.M.C. 520," The Abangarez (United States v. United Fruit Co.), D.C.La., 60 F.2d 543, 544, 1932 A.M.C. 1247, 1249.

■ And for this particular evidence, his authority was special and precise. Having put the master in command of an American vessel, his owners knew of, and were equally bound by, authoritative Coast Guard regulations, 46 C.F.R. 35.15, having the force of law, 46 U.S.C.A. § 239(j), compelling him, as master as well as the owners, to file with the Coast Guard a written report on a prescribed form for all defined marine casualties involving property damage, stranding or grounding, loss of life or serious injuries. His act in preparing, signing, transmitting and filing the report was then in the most exact sense performance of duty imposed by the relationship of owner and shipmaster. The making of the declaration was therefore within the scope of the shipmaster's authority and, like any other authorized act, is one made for and on behalf of and is admissible against, the principal. McCormick, Evidence, § 244 (1954); 4 Wigmore, Evidence, § 1078; Restatement, Agency, §§ 286, 288; 20 Am.Jur., Evidence, §§ 544, 596. Authoritative and authenticated as it was, its receipt as an admission is in this case in no way dependent upon the ordinary shop-book rule or the Federal Business Records Act, 28 U.S.C.A. § 1732.

Its admissibility is not attacked, nor could it be, because the authorized statement made by an authorized agent declares a matter which, to the declarer, may be or rest upon hearsay. McCormick, Evidence, § 240, p. 506 (1954); 4 Wigmore, Evidence, § 1053(1); 20 Am. Jur., Evidence, § 544; see Model Code of Evidence, Rule 506, Comment.

■ This leaves then only the criticism thought below to be decisive that the admission was an expression of opinion on one of the ultimate issues for decision by jury, judge, or both. This is because the crucial declaration was made in response to the printed question on the form which we italicize:

"*Was injury due to own neglect (explain in detail):*
"Yes, partly. Used Hook instead of shackles in block."

Esso and the Trial Court treated this as though it were asking one of the legal questions involved in the cause. But this is to read this with an unreal legalistic formalism. The form was prescribed to be used by laymen and for laymen, primarily in the continuing concern for safety of life at sea. As shipmaster, he has the normal duty to ascertain and report the cause of accidents. Was it due to mechanical or human

failure, to conditions for which the ship and her crew were in a practical sense responsible, or by conditions for which the employee is in that sense accountable? The term "own neglect" is not in this context an inquiry into legal accountability or ultimate liability. It is but another way of asking for the details ("explain in detail") on how or why it came about. In effect it asked: Was it caused by acts of the employee, if so what acts, why and how? It, as so many other shadowy terms in daily industrial business life, illustrates that to rule out "opinion" mechanically is to seal off much of reality. No one would doubt the admissibility of an admission which declared a person to have been "an employee," "in line of duty," "an agent," "disabled," "totally disabled," "intoxicated," "authorized representative," "tenant," "landlord," "lessee," "insured," or the like. And yet each of these may be, and frequently is, the subject of countless legal authorities, textbooks or opinions.

Whatever might be the limits to the rule which now generally accords admissibility even though the admission contains opinions, McCormick, Evidence, § 241 (1954); Wigmore, Evidence, § 1053 (3); Model Code of Evidence, Rule 506, Comment, p. 246, or those to be fixed as new situations arise, the "opinion" contained in the language in this report is neither enough, nor of the kind to destroy admissibility. If, as was the case in much of the factual evidence pro and con on the suitability of an open hook versus shackle, there may inevitably have been an expression in this report of some professional opinion from the point of view of customary maritime practice and experience, no one could have been better suited nor more competent, either as a live swearer on the witness stand or through an admission declaration, than the shipmaster, cf. Martin v. Burgess, 5 Cir., 82 F.2d 321.

Certainly nothing in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, prevents this. For too often misconstrued, that case involved an attempted distortion of the shop book principle to put into evidence not an admission against the adverse party, but a self-serving effort of the party itself to use a favorable declaration of its own agent in its own behalf. And our exclusion of opinion medical reports by persons not having authority to bind the adversary, England v. United States, 5 Cir., 174 F.2d 466, or the rejection in Chapman v. United States, 5 Cir., 194 F.2d 974, certiorari denied 344 U.S. 821, 73 S.Ct. 19, 97 L.Ed. 639 of Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 187 F.2d 122, 23 A.L.R.2d 1349, certiorari denied 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374, and Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467, and their allowance as admissions of conclusions reached by non-judicial investigative bodies in no way forecloses the use here of an authoritative, authenticated declaration at plain odds with the contentions and position being asserted in the litigation.

This evidence was certainly relevant and cogent and like so many similar[3] reports of how an event occurred or what happened, it was admissible. Its importance cannot be minimized, or the error treated as inconsequential. The main issue was whether the block should have had an open hook or a shackle. The plaintiff Cox and the owner by its shipmaster said a shackle should have been used. The owner by its counsel and its court witnesses said a hook with mousing was sufficient. To resolve that

3. These cases illustrate some of the kinds of statements received as admissions: Vicksburg & Meridian R. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257; Chicago, St. P. M. & O. Ry. Co. v. Kulp, 8 Cir., 102 F.2d 352, 133 A.L.R. 1445, certiorari denied 307 U.S. 636, 59 S.Ct. 1032, 83 L.Ed. 1518; Landgraf v. United States, D.C.Pa., 75 F.Supp. 58, 1947 A.M.C. 1539; Sternberg Dredging Co. v. Moran Towing & Transportation Co., Inc., 2 Cir., 196 F.2d 1002, 1952 A.M.C. 1118; Callahan v. Chicago B. & O. Rd. Co., 47 Mont. 401, 133 P. 687, 47 L.R.A., N.S., 587.

conflict the shipmaster's statement for and on behalf of Esso was pertinent and may have been thought impressive, if not decisive, by the jury. It was not, of course, absolutely binding. But it was for the jury to weigh.

We need not determine whether alone this would compel reversal. For we think that the Court erred in additional respects which, with it, require reversal.

To meet or offset the shipowner's impressive defensive arguments that if the gear were faulty, no one knew this better than Cox, an experienced seaman and deck officer, the plaintiff Cox proffered evidence from competent sources to establish the unique circumstances under which a seaman works and is compelled under punitive sanctions to obey orders. The court excluded it by announcing that this was a matter which should and would be handled by instructions to the jury. But the Court gave no such instructions and refused a requested instruction, F.R.C.P. 51, which adequately brought the matter to the Court's attention.

This, as has been elsewhere stated,[4] was plainly needed. The finding of 75% contributory negligence indicates that the seaman's conduct was as much in the scales as the shipowner's. What a reasonably prudent seaman would or would not have done, a question at the root of that inquiry, could only be rightly resolved in the setting of that occupation. The circumstances and nature of that calling,[5] the unique contrast between it and land-based employment, so well epitomized by Justice Jackson in his dissent in Pope & Talbot, Inc., v. Hawn,

346 U.S. 406, 419, 74 S.Ct. 202, 98 L.Ed. 143, 156, 1954 A.M.C. 1, 14, must be brought adequately to the jury's attention.

The need for this was especially great because of the instruction given, note 1, supra, to accompany the special issues inquiring of plaintiff's contributory negligence. Here the judge, paraphrasing asserted defenses, in effect told the jury that if " * * * the plaintiff had the same opportunity to select the tackle and equipment that was to be used as the bosun did and that it was there and available, and if there was negligence in picking out one particular block over the other, then that likewise was chargeable to the plaintiff * * *," the jury should and could state the extent, in percentages, to which such action contributed to his injuries.

Whether Cox had the same opportunity to select equipment, whether he could or ought in prudence to have picked the gear out himself, whether he had any right or prudent duty to decline to use unsuitable gear, whether he should have carried a protest to the master, were questions which, again, had to be resolved in the actual atmosphere of that calling.

All of this was, of course, aggravated by the error of law in this charge. Putting on the seaman, as it did, the burden of selecting gear, appliances and tackle to be used, or inspecting that furnished by the vessel to ascertain whether it was suitable, it was a virtual abandonment of the traditional notions, long expressed, that the vessel

4. Masjulis v. United States Shipping Board Emergency Fleet Corporation, 2 Cir., 31 F.2d 284, 1929 A.M.C. 740; Darlington v. National Bulk Carriers, Inc., 2 Cir., 157 F.2d 817, 1947 A.M.C. 315; Dixon v. United States, D.C.N.Y., 120 F.Supp. 747, 1954 A.M.C. 966, modified on appeal, 2 Cir., 219 F.2d 10.

5. See 46 U.S.C.A. §§ 713, 567, 568, 575, 576, 592, 599, 602, 660, 661, 660a, 653, 655, 662, 701, 706. See also Isbrandtsen Co., Inc., v. Johnson, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294, 1952 A.M.C. 1283.

This is reflected by the unyielding refusal to allow assumed risk in any form as a defense to unseaworthiness or the shipowner's negligence. The Arizona, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075, 1936 A.M.C. 627; Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082, 1936 A.M.C. 635; Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265, 1939 A.M.C. 1; Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, 1944 A.M.C. 1; Courts v. Erickson, 5 Cir., 241 F.2d 499, 1957 A.M.C. 515.

is under an absolute duty to supply and keep in order tools and appliances, must furnish a seaworthy ship and seaworthy appliances. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, 1944 A.M.C. 1; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 A.M.C. 698. The obligation to furnish the gear was on the vessel. The bosun undertook to furnish it. If through the bosun the shipowner did not comply with the heavy obligation to provide seaworthy equipment, it was not the duty of the seaman to select it or pick from the good and bad. This does not free the seaman from the continuing requirement of prudent conduct for improper use of faulty or unseaworthy equipment may present a question of the seaman's responsibility. This is true even in a claim for unseaworthiness as "The right is in the nature of liability without fault for which contributory negligence is not a bar to recovery, although it may be relevant in assessing the damages * * *," concurring opinion of Mr. Justice Frankfurter Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, at page 415, 74 S.Ct. 202, at page 208, 98 L.Ed. 143, at page 154, 1954 A.M.C. 1, at page 11. But the failure of the shipowner to comply with its heavy obligation to select and furnish seaworthy appliances cannot be thus turned into a fault by the seaman.

And yet that is what this instruction did. Concerning both this and the related matter previously discussed of a jury instruction on the discipline of shipboard life, Esso's principal argument is that, assuming error, it was harmless, F.R.C.P. 61. This contention is that since the jury found the appliance was "reasonably suitable," hence seaworthy, Cox' only complaint must be that he was given a command to use reasonably safe equipment. Or, if the jury instruction erroneously placed him under the duty of selecting and choosing between appliances, his only complaint must be that he was required to accept (or choose) reasonably safe equipment.

This has a beguiling, though transitory, appeal. First, we must now look upon the finding of "reasonably suitable," i. e., seaworthy, as infected by the erroneous exclusion of the captain's admission. Second, and equally important, in at least these two respects which were specifically complained of, the Court erred in the jury instructions. Had these two errors not been made, we cannot say what the jury might have held. Under the particular form of submission, it was left to its recollection of charges and countercharges of fault and its own devices in formulating its conclusions. Had the jury clearly understood the rigorous discipline to which Cox, as a seaman, was subjected, and had it not been told that the jury might consider that it was up to Cox, not the vessel, to select or choose the gear, this may well have produced other or different answers both on seaworthiness and on negligence, its type and extent, by shipowner and seaman.

Indeed, the jury's answer was equivocal to Issue No. 7. Did it mean *adequate* or *adequately?* If *adequate* was intended, the vice of the charge is patent. The Trial Court, with considerable reason, apparently crediting the jury's good sense and forgiving its bad grammar, held it to have been an adverb. We would not rest our reversal on a conflict so tenuous, but it illustrates the uncertainties when the judge, appellate or trial, attempts to fathom the jury's process or the impact of erroneous instructions.

With this disposition, we find it unnecessary to determine specifically the complaint concerning the submission of the seaworthiness issue. The objection was primarily that the court did not adequately portray the rigorous, inflexible, absolute character of the duty to supply and keep in order seaworthy appliances which the law, all admit, imposes. In view of another trial, we think it appropriate to point out that where, as is now so common, the seaman's case is for unseaworthiness and negligence under the Jones Act, the

standards of each must be clearly distinguished.

 One is an absolute duty, the other is due care. Where, as this charge did, the ultimate issue of seaworthiness of the gear was in terms of "reasonably suitable" for the work intended, and other issues, such as defendant's negligence and plaintiff's contributory negligence and the distinctly unnautical form of "unavoidable accident" speak in terms of due care, i. e., what a reasonably prudent person would do, there is a great hazard that the jury will get the impression that all is to be tested by one gauge. Of course, that is not so. The owner has an absolute duty to furnish reasonably suitable appliances. If he does not, then no amount of due care or prudence excuses him, whether he knew, or could have known, of its deficiency at the outset or after use. In contrast, under the negligence concept, there is only a duty to use due care, i. e., reasonable prudence, to select and keep in order reasonably suitable appliances. Defects which would not have been known to a reasonably prudent person at the outset, or arose after use and which a reasonably prudent person ought not to have discovered would impose no liability.

Whether these uncertainties were significant or decisive, they were such that they afford additional basis for our unwillingness or inability to determine whether the specific errors in the charge had a demonstrably adverse result.

We treat similarly the complaint that the Court unduly restricted examination and cross examination of experts. Nearly all of the difficulties can likely be avoided by a rephrasing of the questions and a recognition by the Court, applying the spirit of Roth v. Bird, 5 Cir., 239 F.2d 257, 1957 A.M.C. 112, of the full and useful function of the expert when a jury of laymen, unacquainted by common experience with the weird and unusual work and jargon of seamen, undertake, as they must, to determine what a reasonably prudent shipowner, shipmaster, or seaman would do.

 While the cause must be retried on the damage phase, we think the judgment must be affirmed as to maintenance and cure. We hold that Cox cannot now assert that the Court erred in declining to modify the judgment by a provision that the award is "without prejudice to his right to claim further maintenance beyond April 1, 1959, if the facts would then show him entitled to further maintenance under the law * * *."

Whatever objection there might have been to urging a claim for maintenance in the future beyond the date of trial, Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, 1938 A.M.C. 341; Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, 1949 A.M.C. 613, and see Tol v. United States, 9 Cir., 166 F.2d 775, 1948 A.M.C. 553; Maiden v. United States, D.C.Cal., 133 F.Supp. 430, 1955 A.M.C. 2318, neither party asserted any. On the contrary, by mutual acquiescence it was submitted to the jury on classic lines and the jury found that Cox would not achieve a static condition, maximum recovery, until April 1, 1959. While Cox objected to the Court's refusal to modify the judgment, the fact remains that not only did the Court deny the request, but before the motion for new trial in which this was asserted was acted upon, Cox accepted the full fruits of that very judgment. Esso tendered payment of the full sum of $9,906 upon the precise condition that it should be a full satisfaction. Seeking withdrawal of the funds from the registry, Cox accepted those terms and stated himself that there was no contention over the amount fixed by the judgment, note 2, supra. If that judgment was erroneous because it should have contained, as requested, an express reservation of a right to claim future maintenance, then the plaintiff voluntarily relinquished his rights to complain. For "Accepting the fruits of a judgment and thereafter appealing therefrom are totally inconsistent positions, and the election to pursue one course is deemed an abandonment of the other," Kaiser v. Standard Oil Co. of New Jersey, 5 Cir., 89

**638**

F.2d 58, 59, 1937 A.M.C. 818, 819; Carle v. Carle, 149 Tex. 469, 234 S.W.2d 1002; Gaulding v. Gaulding, Tex.Civ.App., 256 S.W.2d 684.

Insofar as this appeal attempts to secure a ruling on what may occur in the future, the answer is simple if not satisfying. We do not, indeed should not, attempt now to determine for ourselves or our successors what the effect of this satisfied judgment will have been, or what rights, if any, Cox may have if, two years hence or later, he should make another trip to the well for post-1959 maintenance and cure. There will be time and judges enough for that to be determined when and if it ever arises.

Affirmed in part and reversed and remanded in part.