**Robert T. CLEGG, Appellant,**

v.

**HARDWARE MUTUAL CASUALTY CO.,**
**Appellee.**

**No. 17313.**

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1959.

H. Alva Brumfield, Baton Rouge, La., for appellant.

H. L. Hammett, New Orleans, La., Hammett & Bertel, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The jury found for the defendant. The plaintiff, Clegg, appealing here, asserts that this resulted from the unexpected use by the Judge of a jury verdict in the form of three questions. In proof of it, plaintiff points out that the Insurer's defense contented itself with testimony of a single witness, the truck driver, who virtually swore the defendant into liability, and the cross examination of plaintiff's witnesses, several of whom were psychiatrists. The Insurer refutes both the claim of error and the asserted cause of the adverse verdict. On the latter, it says that the jury rejected the plaintiff's thesis because it was patently unacceptable to thinking jurors.

The Insurer describes the claim as bizarre. If it is not that, it is an understatement to call it anything less than unique.

The Insurer's truck, southbound on Airline Highway near Norco, Louisiana, suddenly swerved onto its right shoulder to avoid hitting school children alighting from a northbound school bus. The truck hit and smashed several cars and ran into gasoline pumps of a roadside filling station causing fire and widespread destruction. Clegg, of Baton Rouge, was standing nearby. He was not physically injured. He was not touched in any way by anything. What happened to him, he says, was that on seeing this holocaust and the need for someone to rush in to help rescue victims, he suddenly became overwhelmed by fear and realized for the first time in his life that he was not the omnipotent, fearless man his psyche had envisioned him to be. His post-accident awareness that this event had destroyed his self-deceptive image of himself precipitated great emotional and psychic tensions manifesting themselves as psychosomatic headaches, pain in legs and neck, a loss of general interest, a disposition to withdraw from social and family contacts, and the like.

As it might have appeared to the jury of lay persons, the medical theory was that the accident had made Clegg see himself as he really was, not as Clegg had thought himself to be. In short, the accident had destroyed the myth. No longer was he the brave invincible man. Now, as any other, he was a mere human, with defects and limitations and a faint heart. It was, so the Insurer argued with plausibility to the jury, the strange case of a defendant being asked to pay for having helped Clegg by bringing him back to reality—helping him, as it were, to leave Mount Olympus to rejoin the other mortals in Baton Rouge.

To this elusive excursion into the id of Clegg, there were added many irrefutable earth-bound events that made it sound all the more strange. At the time of the accident, Clegg was a TV advertising salesman. Within a short space of time, he had changed employment. He became president of a company, in which he was apparently personally interested, at a salary over twice as high as he had previously earned. He bought and sold several pieces of real estate, had made $25,000 in one trade, and had purchased and moved into a new $40,000 home. Within nine months of the accident he had successfully undertaken a campaign to become elected a city Councilman of Baton Rouge. The psychiatrists, acknowledging these external facts, then reasoned that this was a part of his struggle by which to recapture his lost self esteem, and that while these things were most assuredly being accomplished, it was being done at further damage to Clegg.

■ We have mentioned this briefly not to disparage the claim or intimate its insufficiency or sufficiency as a matter of

law. The jury verdict has relieved us of the necessity of passing judgment on the inherent merits. The District Court submitted it as one under the Louisiana doctrine allowing recovery for emotional damages even though unaccompanied by physical injury. See Pecoraro v. Kopanica, La.App.1937, 173 So. 203; Klein v. Medical Bldg. Realty Co., La.App.1933, 147 So. 122; Laird v. Natchitoches Oil Mill, Inc., 1929, 10 La.App. 191, 120 So. 692. The medical thesis was advanced with great earnestness by two psychiatrists, both of whom were apparently well regarded in the medical community. So for our purposes here we may assume that on a proper showing of facts, or medical facts, or accepted medical theory as fact, the law may accommodate Blackstone and Freud to allow recovery for real psychic or psychosomatic harm. Rather, we have dwelt at some length on this phase of the case because it was, after all, a medical theory which we may assume arguendo the jury could have credited but was not compelled to. More important, it is against this background that the very narrow claim of error and harmful effect must be judged.

The Court gave a long and detailed general charge covering sixteen pages of the record. It covered the usual matters such as credibility, fact-finding function of the jury, principles of negligence law, due care, proximate cause, elements of damages, and was generally indistinguishable from the many general charges which Louisiana Federal Judges on their common law oasis in the midst of a civil law system, have to give in these direct action cases. No exception was taken to any substantive instruction on the governing principles of law. Toward the end of the charge, the Court stated that the jury should return its verdict by answers to the three questions stated in a form of verdict to be furnished inquiring whether (1) the truck driver was negligent, (2) such negligence was the proximate cause of damage and (3) the dollar amount of damages.[1] The charge carefully instructed the jury as to the legal principles to be followed in answering the questions. Not a single exception was taken to these instructions. Nor was there any exception that the charge did not adequately inform the jury how the questions were to be handled either mechanically or in the application of the legal principles so thoroughly elaborated.

The sole claim [2] made is that the Court should not have used the three special questions and that, on the contrary, the Court should have used the traditional

---

1. The form of the verdict with the answers given by the jury was as follows:

| | | *Jury Answer* |
|---|---|---|
| (1) Was the driver of the [insured] truck guilty of negligence? | | Yes |
| If your answer to number one is in the affirmative, answer question number two: | | |
| (2) Was the negligence of the driver of the * * * truck the proximate cause of damage to the plaintiff? | | No |
| If your answer to question number two is in the affirmative, answer question number three: | | |
| (3) What amount do you find to be just and adequate compensation for the damages sustained by the plaintiff? | | [Not answered] |

2. "Mr. Brumfield [plaintiff's counsel]:

"May it please Your Honor, I object to the form which you submitted this case to the jury, particularly the method of using interrogatories for the jury to answer. It is plaintiff's position that the case should have been submitted to the jury and they were advised that they could bring in a general verdict either for the plaintiff or for the defendant without answering specific interrogatories."

**156**

general verdict form which impliedly carries two [3] questions.

■ Of course this able and widely-experienced advocate is too well informed to suggest that a Federal Court in a damage suit *must* give a general charge. His brief recognizes, as it must, that we and others have many times pointed out that whether the verdict is to be one on a general charge or by special questions, or a blend of both under F.R.Civ.P. 49, 28 U.S.C.A., is a matter left to the sound discretion of the Trial Court. Car & General Ins. Corp. v. Cheshire, 5 Cir., 1947, 159 F.2d 985; Home Ins. Co. of New York v. Tydal Co., 5 Cir., 1945, 152 F.2d 309, 311; Employers Mutual Casualty Co. v. Johnson, 5 Cir., 1953, 201 F.2d 153, 156. On the hearing of the motion for new trial, in response to inquiries from the Court on how the three questions could have adversely affected plaintiff, counsel stated that had intended use of them been known in advance, "we would have had an opportunity to maybe suggest or present counterproposals in those interrogatories for the Court to submit." But except for the deficiency or error in question 2, note 1, supra, which we later discuss, neither on brief nor argument before us, does the plaintiff ever point out what the added questions might have been or how these would have been restated or modified.

What the complaint really comes down to then is that the use of questions without advance warning was in violation of F.R.Civ.P. 51 which requires the Court to advise counsel in advance of argument concerning rulings on requested charges and that this adversely deprived the plaintiff of the right of effective summation.[4]

■ The Insurer insists that Rule 51 has nothing to do with a special verdict. We would not agree. The use of a special verdict under Rule 49 frequently calls for explanatory instructions. Sometimes the explanatory instructions and the form of the issues have to be drawn with greater precision than for a general charge. See Jackson v. King, 5 Cir., 955, 223 F.2d 714; Edward E. Morgan Co. v. United States, 5 Cir., 1956, 230 F.2d 896, 60 A.L.R.2d 455; Rorem v. Halliburton Oil Well Cementing Co., 5 Cir., 1957, 246 F.2d 427; Cox v. Esso Shipping Co., 5 Cir., 1957, 247 F.2d 629, 1957 A.M.C. 1927; Texas Plastics, Inc. v. Roto-Lith Ltd., 5 Cir., 1958, 250 F.2d

---

3. On the usual form a general verdict divides itself up along these lines:
 We the jury:
 [1] Find for the ............................
 (plaintiff or defendant)
 And
 (2) Find damages in the sum of $..............
 ..................................
 Foreman.

4. "Rule 51. Instructions to jury: Objection
 "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 The plaintiff has requested at least six special charges, most of which were given by adaptation in the Court's general charge. We may assume, as counsel tells us, that included with these papers was a form of general jury verdict for the foreman's use, and the Court declined it either because he had, or would use, his own form.

844. Indeed, Rule 49(a) works an automatic waiver of jury trial on any issue raised, but not submitted by the Court, "unless before the jury retires [the party] demands its submission to the jury."

■ More than that, we think that the importance of the jury submission is such that, in addition to the explicit requirements of Rule 51, counsel are entitled to know in advance whether the Court proposes to use a general verdict or a special issue verdict. But this requirement does not arise because the verdict is to be general rather than special, or vice versa. It is required to enable counsel intelligently to prepare requested charges, determine all of the issues which must be submitted, and then to plan an effective argument whose objective is to translate persuasion into specific decisive action by the jury. About this, we said in a case coming up from Texas where lawyers have long been trained in special issues, "It [Rule 51] is designed to afford counsel an opportunity to know in advance of the argument, the guiding principles under which the argument should be made." Dallas Ry. & Terminal Co. v. Sullivan, 5 Cir., 1940, 108 F.2d 581, 583.

■■ As the matter goes to the assurance of a trial of substantial fairness, not technical perfection, the nature and time of the indication which the Court should give counsel, and the showing of harm from any supposed dereliction must be measured likewise in the same light of substantial justice. F.R.Civ.P. 61. If done here, the plaintiff can show no real error or harm.

In this analysis, it is unnecessary to try to catalogue this charge and verdict as a general one, a special issue verdict under Rule 49(a), a general one with special questions under 49(b), or an adaptation of both under 49(a) which provides that the Court " * * * may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate." It is immaterial because a consideration of this whole record, the charge as a whole, and the arguments of counsel themselves comprising thirty-two pages of the record, reflects that at this stage of the trial, Court and counsel were concerned with three matters and three matters only. First, there was the negligence of the truck driver. This was scarcely debated since it seemed self-evident, as the jury later found, that he was. The real controversy raged over the question whether Clegg had really suffered any damage at all. The plaintiff said he was worse off and that this episode had triggered this psychic mechanism. The Insurer, just as stoutly, claimed that Clegg was better, not worse, off, and that it was simply absurd to say that a truck owner should be held responsible for any such farfetched consequences. This was the issue, then, of proximate cause. Finally, there was the question of the money award to compensate for the damages if any were found. From Clegg's standpoint, this ranged from some nineteen hundred dollars covering numerous small items of medical, psychiatric, hospital bills, and car rental to a demand for seventy-five thousand to two-hundred fifty thousand dollars for mental pain and anguish. To the Insurer the amount was zero.

These were the precise questions, in that very order, which counsel argued vehemently. These were the precise questions, in that very order, which the Court asked the jury to answer. Indeed, to read the arguments now, it is almost as though each had been advised specifically that these very questions would be put. Moreover, these are the very precise questions which the jury would have to answer under the same general principles stated to them had the verdict form been the traditional one, see note 3, supra.

Under these circumstances, this action did not precipitate any real surprise. Dallas Ry. & Terminal Co. v. Sullivan, 5 Cir., 1940, 108 F.2d 581; Cate v. Good Bros., Inc., 3 Cir., 1950, 181 F.2d 146. It would have been quite appropriate for the Court to have indicated the precise form of the verdict which it proposed to have the jury use, but this was not com-

pelled and the plaintiff would not have been any better informed than he was when the Court concluded the charge as given.

 Complaint is also made that question No. 2, note 1, supra, was imperfect in two respects. First, it referred to *the* proximate cause, which impliedly ruled out concurrent causes. Second, it inquired of *damage* proximately caused, rather than *injury* proximately caused. We think neither of these present substantial error. No objection was made to either. In view of this we could decline to consider this at all. But because there is a suggestion that plaintiff's failure to comply with the requirement of a specific exception to the charge, F.R.Civ.P. 49(a), was one of the results of the sudden and unexpected use of this new jury verdict form, we have nevertheless considered them. But we fail to see in them any error of a kind which would here authorize reversal. F. R.Civ.P. 61. If in the context of this charge, there was any real distinction between the use of the article *a* rather than *the*, or the use of *damage* instead of *injury*, it completely escaped plaintiff's counsel at the time. If to his skilled mind, the words were undecisive, we are safe in assuming that the jury hardly read more into them. Indeed, counsel's own requested instruction which the Court paraphrased used the expression "*the* proximate cause." The term *damage* instead of *injury* was not confusing. The Louisiana Codal provision speaks of "Every act whatever of man that causes damage to another, * * *." LSA–C. C. art. 2315.

 To resolve this elusive and abstruse medico-psychic debate was, as plaintiff's counsel put it, "the function of the jury." To this the District Court responded "Well, they functioned." And since no error is found and the verdict is binding on all, including this Court, we may conclude that the Court below had the prerogative to say that "They functioned right."

Affirmed.