Abdo Tehr HUSSEIN, Appellant,

v.

ISTHMIAN LINES, INC., Appellee.

No. 23862.

United States Court of Appeals
Fifth Circuit.

Dec. 30, 1968.

William A. Summers, III, Clifton S. Carl, Garrett & Carl, New Orleans, La., complainant-appellant.

Paul A. Nalty, New Orleans, La., for Isthmian Line, Inc.; Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, La., of counsel.

Before GEWIN and BELL, Circuit Judges, and BOOTLE, District Judge.

BOOTLE, District Judge:

While employed as wiper aboard the appellee's ship, the SS Steel Seafarer, the appellant, Abdo Tehr Hussein, was allegedly injured by falling from a ladder in the engine room. At the time of the fall, appellant was engaged in the task of carrying slag up from the engine room in a bucket to be discharged over the side of the ship. Suit was brought against Isthmian Lines by appellant under the Jones Act, 46 U.S.C. section 688, and the general maritime law alleging both negligence and unseaworthiness of the vessel.

From a judgment entered after a jury verdict in favor of Isthmian Lines, Hussein brings this appeal complaining that the district court erred: (1) in refusing to charge the jury on unseaworthiness; (2) in admitting as a business record of Isthmian Lines under the Federal Business Records Act, 28 U.S.C. section 1732, reports received by Isthmian Lines from foreign doctors; (3) in refusing to instruct the jury that the plaintiff was not obliged to select equipment to do his assigned task, and (4) in refusing to instruct the jury so as to negative the applicability of the doctrine of assumption of risk.

### Failure to Charge on Unseaworthiness

The trial judge gave as his reason for charging the jury on negligence only and not on seaworthiness that "[H]e thought this was a case for negligence predominantly, right or wrong, and with unseaworthiness, we would just be confusing the jury, because it would involve about the same ground." In this determination the trial court erred.

The duty to furnish a seaworthy vessel (a vessel and appurtenances reasonably fit for their intended use) is absolute and is completely separate from the shipowner's duty under the Jones Act to exercise reasonable care. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed.2d 941, 948 (1960). This duty is a type of liability without fault and may be violated without regard to negligence. Seas Shipping Company v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099, 1106 (1946). Since the record contains evidence from which the jury could have found that the appellant was required to work on a greasy ladder and was not furnished the proper equipment to do the job assigned to him, the erroneous refusal to give the requested charge was prejudicial. Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967).

### Admission of Medical Reports as Business Records

During the course of the trial, the defendant offered and the court received into evidence over objection two one-page documents and two letters from a physician. With respect to the one-page documents, in each instance, the upper half of the page is labeled "Request for Medical Attention" and the lower half "Doctor's Report." These are forms used by the defendant addressed to an agent in foreign ports signed by the Chief Officer of the ship as requests for medical attention for one of the crew. The upper half of the form contains such request and sets forth the name of the patient, his age, a brief description of his injury or illness and states time and place sustained. The lower half of the page calls for the following information to be supplied over the doctor's signature: "Diagnosis ——————— Treatment Given ——————— Recommendations —— ——————— (Please Check one) Full duty —— Days complete bed rest —— Hospitalization —— Name of Hospital ———————." The form concludes with these instructions "Original and

one copy signed by Doctor to be returned to vessel. One copy may be retained by the Doctor." One of these forms was, on July 6, 1961, signed by Dr. Razahm at Bandar Shahpour and said: "Diagnosis: hurt on chest   Treatment given: Sedative tablet Recommendation: Rubbing liniment—three days rest." The other form was on July 11, 1961, signed by Dr. S. M. Hassan Kalantar at Khorramshahr, Iran and said: "Diagnosis: Muscular strain due to trauma, left side' of chest wall and back. Treatment given: Sedative, X ray of ribs. Recommendations: return on July 12, 1961 for X ray study. Light duty on board. Full duty *XXXX*." The two letters were from the said Dr. Kalantar, one dated July 12, 1961, addressed to the Master of the Steel Seafarer and reading in part "physical examination is neg. I believe he is not sick and simulating," and the other dated July 18, 1961, addressed to defendant's agent, American Eastern Corp. and reading in part "no physical finding, X ray was neg. for any abnormality, I believe he is not sick." Despite appropriate objections of appellant's counsel, these two reports and these two letters were received as business records of Isthmian Lines under the Federal Business Records Act, 28 U.S.C. section 1732. We hold that the trial court erred in admitting these writings.

These writings were clearly not admissible under the Federal Act.[1] Neither the reports nor the letters are business records of Isthmian Lines. Letters from a physician addressed to an employer about the physical condition of the employer's employee do not constitute business records of the employer within the purview of the Act. Cromling v. Pittsburgh & Lake Erie R. Co., 327 F.2d 142, 147 (3d Cir. 1963); Masterson v. Pennsylvania Ry., 182 F.2d 793 (3d Cir. 1950). Nor do the "Doctor's Reports" on the two forms above discussed constitute business records of the employer within the purview of the Act. In Palmer v. Hoffman, 318 U.S. 109, 113, 63 S.Ct. 477, 87 L.Ed. 645, 649 (1943), the Court said "the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act." No attempt was made to lay a foundation for the admission of any of these documents as business records of the examining physician.

"Obviously a writing is not admissible under the Business Records Acts merely because it may appear upon its face to be a writing made by a physician in the regular course of his practice. It must first be shown that the writing was actually made by or under the direction of the physician at or near the time of his examination of the individual in question and also that it was his custom in the regular course of his professional practice to make such a record." Masterson v. Pennsylvania Ry., supra, 182 F.2d at 797.

In view of the above holding, we do not reach the question whether, if these writings could qualify as business records, those portions thereof would be admissible which are merely diagnostic or expressive of opinions or conclusions of the doctors.

Indicating inadmissibility of such portions are Birdsell v. United States, 346 F.2d 775, 779 (5th Cir. 1965); Mullican v. United States, 252 F.2d 398, 404 (5th Cir. 1958); Texas and Pacific Ry. Co. v. Buckles, 232 F.2d 257, 261 (5th Cir. 1956); England v. United States, 174 F.2d 466, 469 (5th Cir. 1949); Lykes Brothers S.S. Co. v. Grubaugh, 128 F.2d 387, 390 (5th Cir. 1942); Lee v. United States, 91 F.2d 326, 330 (5th Cir. 1937); Skogen v. Dow Chemical Company, 375 F.2d 692, 704–705 (8th Cir. 1967); New York Life Insurance Company v. Taylor,

---

1. No contention has been advanced that these writings would have been admissible under the rules applied in Louisiana state courts and thus admissible in a federal court sitting in Louisiana. See Fed.R. Civ.P. 43(a).

79 U.S.App.D.C. 66, 147 F.2d 297, 306–307 (1944); Martin v. Baldwin, 215 Ga. 293, 110 S.E.2d 344 (1959); Meeks v. Lunsford, 106 Ga.App. 154, 126 S.E.2d 531 (1962); Knudsen v. Duffee-Freeman, Inc., 95 Ga.App. 872, 99 S.E.2d 370 (1957). But see: Thomas v. Hogan, 308 F.2d 355, 359–361 (4th Cir. 1962) (discussion of diversity of views in various circuits); Glawe v. Rulon, 284 F.2d 495, 498 (8th Cir. 1960); Medina v. Erickson, 226 F.2d 475, 482 (9th Cir. 1955); New York Life Insurance Company v. Taylor, supra (dissenting opinion); Adler v. New York Life Ins. Co., 33 F.2d 827 (8th Cir. 1929).

### Duty to Select Proper Equipment

Appellant's request to charge number 5 reads: "I charge you that the burden is not upon the seaman to select proper tools and appliances. These are to be supplied to him." The trial judge declined to give this specific instruction, being of the opinion that the basic point contained therein was covered in his charge that "It was the duty of the defendant to furnish and supply the plaintiff with equipment reasonably proper and adequate for the performance of his duties."

■ We are of the opinion that the trial judge was correct in this ruling. The substance of the requested instruction was covered in the judge's charge. The specific language and emphasis used in the request might have been more favorable to appellant's case than was the language of the charge actually given, but appellant cannot complain of such matters of mere form. Fleming v. Michigan Mutual Liability Company, 363 F.2d 186 (5th Cir. 1966); Cohen v. Evening Star Newspaper Company, 72 App.D.C. 258, 113 F.2d 523 (1940). A charge should seek clarity, not emphasis. Clarity was achieved. Furthermore, in a colloquy with the trial judge, the appellant's attorney gave as his reason for the request that it might be argued to the jury that it was the duty of the employee to go get the proper tools

if he needed them and that the requested instruction would be needed to overcome that argument if it were made. There has been no contention that the argument feared by appellant's counsel was ever made to the jury. There was no error in the trial judge's refusal to give appellant's request number 5.

■ The foregoing assumes the correctness of the requested charge. But we question its correctness. Its verbiage derives from Cox v. Esso Shipping Company, 247 F.2d 629, 636 (5th Cir. 1957) approved in Street v. Isthmian Lines, Inc., 313 F.2d 35 (2d Cir. 1963) in both of which cases similar language was appropriately used by appellate courts not as proposed jury instructions but graphically to emphasize the absolute character, regardless of negligence, of the vessel owner's duty to furnish seamen with tools reasonably fit for their intended use (see Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 327, 5 L.Ed. 2d 20, 23 (1960)). The language of the request was doubtless inspired directly or indirectly by this statement in Cox, supra, 247 F.2d at 636: "The obligation to furnish the gear was on the vessel. The bosun undertook to furnish it. If through the bosun the shipowner did not comply with the heavy obligation to provide seaworthy equipment, it was not the duty of the seaman to select it or pick from the good and bad." The quoted language was never intended to mean and does not imply that there cannot be circumstances under which a seaman is under a duty to exercise ordinary care in selecting or choosing one tool over another, say for instance, where the vessel owner has furnished a number of tools each being fit for its particular phase of a multi-phased operation being performed by the seaman. This clearly appears from the following language coming immediately after the above quote from Cox:

"This does not free the seaman from the continuing requirement of prudent conduct for improper use of faulty or unseaworthy equipment may present a question of the seaman's responsi-

bility. This is true even in a claim for unseaworthiness as 'The right is in the nature of liability without fault for which contributory negligence is not a bar to recovery, although it may be relevant in assessing the damages * * *,' concurring opinion of Mr. Justice Frankfurter. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, at page 415, 74 S.Ct. 202, at page 208, 98 L. Ed. 143, at page 154, 1954 A.M.C. 1, at page 11."

That a seaman may under certain circumstances be under a duty to select is made clear by Arena v. Luckenbach Steamship Company, 279 F.2d 186 (1st Cir. 1960) where the court said, at page 188:

"A vessel is not unseaworthy simply because the improper type of equipment was used by someone unless, also, it appears that the proper type was unavailable. In the ice cream case, of which plaintiff makes much, the waiter's use of a knife was forced upon him by the absence of the proper tool. Ferguson v. Moore-McCormack Lines, 1956, 352 U.S. 521, 522, 77 S.Ct. 457, 1 L.Ed.2d 511."

In the ice cream-butcher knife case the Supreme Court significantly observed "There was no showing that any device was close at hand which would have safely performed the task." Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511, 513 (1957). We think it plain that in the ice cream-butcher knife case, the hemispherical scoop having proved inadequate, if there had been another device close at hand more suitable than the butcher knife, the baker would have been under a duty under "the continuing requirement of prudent conduct" to have selected the more suitable device. See also, Taylor v. SS Helen Lykes, Etc., 5 Cir. 1968, 402 F.2d 777 [October 31, 1968], affirming 268 F.Supp. 932 (E.D. La.1967). In sum, we think the charge as given was entirely adequate without the inclusion of the requested charge and that the requested charge if given could have been misleading to the jury.

## Assumption of Risk

■ At the trial appellant's counsel voiced his objection to the trial judge's failure to give requested instructions numbers 9 and 10 so as to negative the applicability of the doctrine of assumption of risk in this language: "On number 9 [and 10] we except in this sense, that we agree with your honor that [assumption of risk] has no place in the case, but we feel that it has been injected in the case by the comparative negligence instruction in your charge."

The trial judge charged on comparative negligence in the following language:

"In the present case the burden is upon the plaintiff to establish by a preponderance of the evidence that the defendant was guilty of negligence in at last (sic) on (sic) of the particulars and that such negligence as specified was a proximate cause of his injury.

"In the present case the burden is upon the defendant to establish by a preponderance of the evidence that the plaintiff was guilty of negligence in attempting to carry a bucket of refuse up the stairway in question under the conditions then and there existing and that such negligence was a proximate cause of his injury.

"Under the Jones Act, contributory negligence on the part of a seaman does not bar his recovery of damages but diminishes the amount of damages in proportion to the amount of negligence attributed to him."

* * * * * *

" * * * When you have determined the total amount of the plaintiff's damages, you will then determine what proportion, stated on a percentage basis, of the plaintiff's own negligence, if any, contributed as a proximate cause of those damages."

The judge also gave the following instructions with reference to the special verdict question forms:

"This is question number 1: Was the defendant, Isthmian Lines, Inc.,

guilty of negligence? Answer 'yes' or 'no' * * *

"Question number 2: If so, was such negligence a proximate cause of the injury to the plaintiff? Answer 'yes' or 'no'.

"* * * [I]f your answer to question number 2 is 'yes', then you will answer question number 3.

"Question number 3: What was the total amount of the plaintiff's damages * * *?

"If your answer to question number 1 and question number 2 are both 'yes', you will then proceed to answer question number 4.

"Question number 4: Was the plaintiff guilty of negligence? Answer 'yes' or 'no'."

\* \* \* \* \* \*

"Question number 5: If so, was such negligence a proximate cause of his injury? Answer 'yes' or 'no'."

\* \* \* \* \* \*

"Question number 6: If so, in what extent stated in terms of percentage?

"Answer in per cent."

These instructions are very clear as to the proper effect any faulty judgment on the part of the appellant is to have on the verdict. Furthermore, assumption of risk was neither pleaded nor argued as a defense. Pyles v. American Trading & Production Corporation, 372 F.2d 611 (5th Cir. 1967), controls and under the circumstances of the present case there was no error in refusing to charge that assumption of risk is no defense.

### Conclusion

The trial judge's rulings on appellant's requests to charge numbers 5, 9 and 10 are affirmed. Due to the refusal of the district judge to charge the jury on unseaworthiness and the admission of the doctors' reports and letters under the Federal Business Records Act, the judgment appealed from is reversed and the case is remanded for a new trial in accordance with this opinion.